Kenneth C. BUCKLEY, Appellant–Defendant,

v.

STATE of Indiana, Appellee–Plaintiff.

No. 48A02–0211–CR–982.

Court of Appeals of Indiana.

Oct. 24, 2003.

John T. Wilson, Anderson, IN, Attorney for Appellant.

Steve Carter, Attorney General of Indiana, Richard C. Webster, Deputy Attorney General, Indianapolis, IN, Attorneys for Appellee.

## OPINION

SHARPNACK, Judge.

■ Kenneth Buckley appeals his convictions for possession of cocaine with in-

tent to deliver as a class A felony[1] and maintaining a common nuisance as a class D felony.[2] Buckley raises one issue, which we restate as whether the trial court abused it discretion by admitting into evidence the cocaine found in a tin at Buckley's house.[3]

We reverse and remand.

The relevant facts follow. In January 2002, Buckley and Tiffany Wright were renting a house in Anderson, Indiana. On January 11, 2002, Officers Tim Gremes and William Bailey of the Anderson Police Department were dispatched to Buckley and Wright's house in response to an activated residential alarm. When they arrived at the house, Officer Bailey went to the front door, and Officer Gremes stood near the front window where he saw Buckley, Wright, and a child in the living room. Officer Bailey knocked on the front door, and Buckley jumped up, put his foot against the door, and asked who was there. Officer Bailey identified himself and Officer Gremes as Anderson police officers. From the window, Officer Gremes saw Wright jump up from the sofa, grab a tin from the table, take it to the kitchen, and then return to the living room. Buckley then let the officers into the house. The officers told Buckley that they needed to talk to him about the alarm, verified Buckley and Wright as renters of the house, and learned that Buckley had accidentally set off the alarm.

Officer Gremes asked Wright why she had jumped up from the sofa and taken

---

1. Ind.Code § 35–48–4–1 (Supp.2002).

2. Ind.Code § 35–48–4–13 (Supp.2002).

3. Buckley also argues that the trial court erred by giving the State's instruction on aiding and abetting. Because of our resolution of Buckley's argument that the trial court abused its discretion by admitting into evidence the cocaine found in a tin at Buckley's house, we need not address this issue. Moreover, Buckley waived this instruction issue on appeal because he failed to object to the instruction at trial. *See, e.g., Williams v. State,* 771 N.E.2d 70, 72 (Ind.2002) (holding that a defendant's failure to object to a trial court's instructions preserves no error for appeal).

the tin to the kitchen. Wright responded that she needed to check on the baby. Officer Gremes expressed his doubt about Wright's response because he had seen the child playing on the living room floor. Officer Gremes then asked Buckley and Wright if there was anybody else in the house, and they responded "no." Transcript at 55. Officer Bailey asked Buckley if the officers could look around the house, and Buckley responded that they could. Officer Gremes asked if he could search the house for officer safety to make sure that no one else was in the house. Buckley and Wright consented to the search and responded that the officers could "go ahead and check ... anything [they] want[ed]." Transcript at 55, 162. Officer Bailey stayed in the living room with Buckley and Wright. Officer Gremes went into the kitchen and saw the tin that Wright had removed from the living room. He opened the tin and saw nineteen small plastic packets of a white, rocky substance. The contents of the tin were later tested and determined to be 19.43 grams of cocaine. He also saw a gun sitting on top of the refrigerator. Officer Gremes unloaded the gun and found out from dispatch that it was stolen. The officers placed Buckley and Wright in handcuffs and showed the tin and its contents to them, but they denied knowledge of it. Buckley and Wright later signed a consent to search form authorizing the officers to search their house.

The State charged Buckley with possession of cocaine with intent to deliver as a class A felony and maintaining a common nuisance as a class D felony. Prior to trial, Buckley filed a motion to suppress evidence of the search of the tin and the seizure of the cocaine. After holding a hearing, the trial court denied Buckley's motion. When the State introduced the cocaine into evidence at trial, Buckley objected. The trial court overruled the objection and admitted the cocaine into evidence.

The jury found Buckley guilty of possession of cocaine with intent to deliver as a class A felony and maintaining a common nuisance as a class D felony. The trial court sentenced Buckley to thirty-five years in the Indiana Department of Correction for the possession of cocaine with intent to deliver conviction and two years for the maintaining a common nuisance conviction and ordered that these two sentences be served concurrently.

■ The sole issue is whether the trial court abused it discretion by admitting into evidence the cocaine found in a tin at Buckley's house. Because the admission and exclusion of evidence falls within the sound discretion of the trial court, we review the admission of evidence only for abuse of discretion. *Wilson v. State*, 765 N.E.2d 1265, 1272 (Ind.2002). An abuse of discretion occurs "where the decision is clearly against the logic and effect of the facts and circumstances." *Smith v. State*, 754 N.E.2d 502, 504 (Ind.2001).

■ Buckley argues that the admission of the cocaine into evidence violated his constitutional rights against unreasonable search and seizure under the Fourth Amendment to the United States Constitution.[4] The Fourth Amendment protects persons from unreasonable search and seizure, and this protection has been extended to the states through the Fourteenth Amendment. *Krise v. State*, 746 N.E.2d 957, 961 (Ind.2001). Warrantless searches and seizures inside the home are presump-

---

**4.** Buckley also argues that the search violated his rights under Article I, Section 11 of the Indiana Constitution. Because we conclude that the search violated his rights under the Fourth Amendment, we need not address this argument.

tively unreasonable. *Id.* When a search is conducted without a warrant, the State has the burden of proving that an exception to the warrant requirement existed at the time of the search. *Id.* A valid consent to search is one exception to the warrant requirement. *Id.* The theory underlying this exception is that, when an individual gives the State permission to search either his person or property, the governmental intrusion is presumably reasonable. *Pinkney v. State,* 742 N.E.2d 956, 959 (Ind.Ct. App.2001), *trans. denied.*

▅▅▅ A consent to search is valid except where procured by fraud, duress, fear, or intimidation or where it is merely a submission to the supremacy of the law. *Joyner v. State,* 736 N.E.2d 232, 242 (Ind. 2000). Because it comes within an established exception to the Fourth Amendment warrant requirement, the scope of the authority to search is strictly limited to the consent given, and a consensual search is reasonable only if it is kept within the bounds of that consent. *Pinkney,* 742 N.E.2d at 959. The standard for measuring the scope of a suspect's consent under the Fourth Amendment is that of objective reasonableness, in other words, "what would the typical reasonable person have understood by the exchange between the officer and the suspect?" *Id.* (citing *Florida v. Jimeno,* 500 U.S. 248, 251, 111 S.Ct. 1801, 1803–04, 114 L.Ed.2d 297 (1991)). In addition to objective reasonableness, the scope of a consensual search is generally measured by the expressed object to be searched and the subject's imposed limitations. *Krise,* 746 N.E.2d at 966. Thus, the scope of a consent search is factually sensitive and does not depend solely on the express object to be searched. *Id.*

Here, after responding to the residential alarm and expressing doubt about why Wright went to the kitchen with the tin before the officers were let into the house,

Officer Gremes asked Buckley and Wright if there was anybody else in the house. Buckley and Wright responded that no one else was in the house. Officer Bailey asked Buckley if the officers could look around the house, and Buckley responded that they could. Officer Gremes specifically asked if he could search for officer safety to make sure that no one else was in the house. Buckley and Wright consented to the officer safety search request and responded that the officers could "go ahead and check ... anything [they] want[ed]." Transcript at 55, 162. Officer Gremes then went into the kitchen, found the tin, opened it, and found the cocaine.

It is undisputed that Buckley consented to a search of his house. However, Buckley contends that Officer Gremes's search of the tin exceeded the scope of his consent to search the house. Specifically, Buckley contends that the express object of the officers' search was for officer safety to make sure that no one else was in the house, and a reasonable person would have understood that the officers would have only looked in places where a person might be hiding. The State argues that the search was within the scope of Buckley's consent to search because the request to search by Officers Gremes and Bailey was broad in terms of what could be searched and that "the police could reasonably look anywhere and into anything for the purpose[] of officer safety, including the tin, which was large enough to hold a weapon." Appellee's Brief at 7. The State further contends that the search of the tin was within the scope of the consent given because Buckley and Wright did not put any restrictions on the search, did not object when the tin was opened, and later signed consent to search forms.

We find that *Smith v. State,* 713 N.E.2d 338 (Ind.Ct.App.1999), *trans. denied* is instructive in determining whether the police

officers exceeded the scope of Buckley's consent to search. In *Smith,* Indiana State Troopers pulled over the defendant's vehicle for a traffic stop after their computer check of the license plate revealed that the car was registered to a different color vehicle. *Smith,* 713 N.E.2d at 341. After the defendant got out of the car, he informed the troopers that he had painted the car. *Id.* The troopers asked the defendant if they could search his car for guns, drugs, money, or illegal contraband. *Id.* The defendant consented to the search. *Id.* The troopers searched the car and only found two cellular phones. *Id.* One of the troopers took the phones back to his police car where he removed the batteries and performed a "short-out technique" to determine if the phones had been illegally cloned or reprogrammed so that when the phone was in use, the charges would be billed to someone else's phone number. *Id.* The trooper determined that the phones had been cloned. *Id.* The trooper then left his police car and went back to the defendant's car to inform the defendant that he had performed the short-out technique and retrieved the electronic contents of the cellular phone. *Id.* at 344.

The defendant filed a motion to suppress the search of the phone, but the trial court denied the motion and admitted the phone into evidence at trial. *Id.* at 341. The defendant appealed, arguing, in part, that the troopers' search of the phone to obtain the internal information exceeded the scope of his consent. *Id.* at 343. We determined that the expressed objects of the troopers' search were guns, drugs, money, and illegal contraband and that based on the exchange between the defendant and the troopers, a reasonable person would have understood the defendant's consent to include permission to search only containers inside his car that might have contained those items specified by the troopers. *Id.* at 343–344. Because a

cellular phone was a container capable of hiding drugs or money, we held that "it was proper for the troopers to seize the cellular phone long enough to determine whether it was truly an operating cellular phone or merely a pretense for hiding the expressed objects of their search." *Id.* at 343. However, we also held that the further actions of the troopers in accessing the computer memory of the phone to retrieve the electronic contents was invalid and exceeded the scope of the defendant's consent to search. *Id.* Because the troopers had obtained consent to search the defendant's car for guns, drugs, money, and illegal contraband, they had to limit their activity to that which was necessary to search for those specified items. *Id.* at 344.

██ Just as the troopers in *Smith* exceeded the scope of the defendant's consent to search, the officers here also exceeded the scope of Buckley's consent to search. Officer Gremes specifically asked Buckley and Wright if he could check the house for officer safety to make sure that there was no one else in the house. Thus, the expressed object of Officer Gremes's search was to search for a person. Although he may have been curious about why Wright took the tin into the kitchen before the officers entered the house, he did not ask them if his search could include the tin. "Government agents may not obtain consent to search on the representation that they intend to look only for certain specified items and subsequently use that consent as a license to conduct a general exploratory search." *Id.* at 344 (citation omitted). In response to Officer Gremes's request to search the house for a person, Buckley granted consent by stating that he could check anything. Buckley's consent, however, did not authorize Officer Gremes to search the tin. An objectively reasonable person assessing

Buckley's exchange with Officer Gremes would have understood that Buckley consented Officer Gremes's request to the search of the house for another person but did not offer to allow Officer Gremes to search any container within the house. Therefore, a reasonable person would have believed that Officer Gremes intended to search only in places where a person could have been hiding. Because Officer Gremes obtained consent to search Buckley's house for another person, he needed to confine his activity to that which was necessary to search for a person. *See, e.g., Smith,* 713 N.E.2d at 344 (holding that police cannot use a defendant's consent to search for specified items as a license to do an exploratory search). Officer Gremes, however, exceeded the scope of consent to search when he opened the tin and found the cocaine.

■ We also reject the State's argument that the search of the tin was within the scope of the consent given because Buckley did not object when the tin was opened and later signed consent to search forms. First, Buckley was in the living room when Officer Gremes went into the kitchen, opened the tin, and found the cocaine. It was not until Officer Gremes took Buckley into the kitchen and showed him the tin that he informed Buckley that he had opened the tin. Under these circumstances, Buckley had no way of knowing what Officer Gremes was doing in the kitchen and, thus, had no reasonable opportunity to object when Officer Gremes exceeded the scope of Buckley's consent to search. *See, e.g., id.* (holding the defendant's failure to object when the troopers exceeded the scope of his consent to search did not render the search valid).

■ Additionally, the fact that the officers obtained a written consent from Buckley does not save the search from illegality. Officer Gremes had already opened the tin and found the cocaine *before* he obtained the written consent to search Buckley's house. The State had the burden to show that the officers had consent to search the tin *prior to* the search of the tin. *See Krise,* 746 N.E.2d at 961 (holding that when police conduct a warrantless search, the State has the burden of proving an exception to the warrant requirement existed at the time of the search). The State, however, did not meet that burden. Given the State's failure to justify the warrantless search of the tin and seizure of the cocaine, we must conclude that the trial court abused its discretion by allowing the cocaine into evidence at trial. *See, e.g., Smith,* 713 N.E.2d at 345 (holding that "in a trial in a state court, evidence which was discovered during a search prohibited by the Fourth Amendment is inadmissible") (quoting *Pirtle v. State,* 263 Ind. 16, 29, 323 N.E.2d 634, 640 (1975)).

■ Because we have determined that a constitutional error exists, we must now determine whether that error was prejudicial to Buckley. A Fourth Amendment error like the one that occurred in this case is subject to a constitutional harmless error analysis. *Esquerdo v. State,* 640 N.E.2d 1023, 1030 (Ind.1994). Only where we can state beyond a reasonable doubt that the improperly admitted evidence did not contribute to the defendant's conviction is the error harmless. *Id.* Here, the evidence used to convict Buckley of possession of cocaine with intent to deliver as a class A felony and maintaining a common nuisance as a class D felony was the 19.43 grams of cocaine improperly seized and the officers' testimony regarding that seizure. Given the fact that the cocaine was essential to the case against Buckley, we cannot say that the erroneous admission of the cocaine into evidence at trial was harmless beyond a

reasonable doubt. Thus, we must reverse Buckley's convictions.

For the foregoing reasons, we reverse Buckley's convictions for possession of cocaine with intent to deliver as a class A felony and maintaining a common nuisance as a class D felony, and remand for further proceedings consistent with this opinion.

Reversed and remanded.

RILEY, J. concurs.

BARNES, J. concurs with separate concurring opinion.

BARNES, Judge, concurring.

It pains me to concur in the reversal of a case where a stolen handgun and almost twenty grams of cocaine were seized. However, I believe Judge Sharpnack has correctly and insightfully analyzed this set of facts, and that the appropriate legal result has been reached. Simply put, police cannot and are not constitutionally empowered to look for an elephant in an ice cube tray. That is to say, the scope of the permission secured for the search cannot be breached by subsequent police conduct.

There is no mystery as to what occurred here. The police officer saw Wright take the tin into another room. The police thought that suspicious and curious and after seeking permission to search the house for "officer safety" seized and looked into the tin. This is understandable police inquisitiveness, but impermissible and unconstitutional conduct.