Lawrence PRIMUS, Appellant–
Defendant,

v.

STATE of Indiana, Appellee–Plaintiff.

No. 49A02–0310–CR–907.

Court of Appeals of Indiana.

Aug. 11, 2004.

Kendra L. Koski, Indianapolis, IN, Attorney for Appellant.

Steve Carter, Attorney General of Indiana, Justin F. Roebel, Deputy Attorney General, Indianapolis, IN, Attorneys for Appellee.

## OPINION

KIRSCH, Chief Judge.

Lawrence Primus brings this interlocutory appeal of the trial court's denial of his motion to suppress, raising the following issue for review: whether the trial court erred in determining that the drug evidence was admissible because it was the result of a consensual search where his roommate, who was at a different location, gave consent for the search but he did not.

We affirm.

### FACTS AND PROCEDURAL HISTORY

On March 24, 2003, Detective Brady Ball of the Indianapolis Police Department was called to the scene of a traffic stop of a

vehicle that contained cocaine. The driver, Lena Labroi, advised Detective Ball that the cocaine belonged to Primus, with whom she and their child lived, and that there was more cocaine at their home. Ball asked Labroi some questions and gained her consent to search her residence. Officers went to the residence and located Primus outside, a few houses down the street. Detective Ball advised Primus of his Miranda rights, and Primus told Detective Ball that he and Labroi lived together. Detective Ball did not request Primus's permission to search the home.

Based on Labroi's consent, officers searched the home and found cocaine. Primus was arrested and charged with dealing in cocaine and possession of cocaine. He moved to suppress the cocaine as the product of an illegal search. The trial court denied the motion, and Primus asked the trial court to certify its decision for interlocutory appeal. The trial court did so, and this court accepted jurisdiction of the case. *See* Ind. Appellate Rule 14(B).

## DISCUSSION AND DECISION

■ Primus argues that the trial court erred in denying his motion to suppress. Our review of the denial of a motion to suppress is similar to other sufficiency matters. *Crabtree v. State*, 762 N.E.2d 217, 219 (Ind.Ct.App.2002). The record must disclose substantial evidence of probative value that supports the trial court's decision. *Clark v. State*, 804 N.E.2d 196, 198 (Ind.Ct.App.2004); *Crabtree*, 762 N.E.2d at 219. We neither reweigh the evidence nor judge the credibility of witnesses. *Clark*, 804 N.E.2d at 198. Rather, we consider the evidence most favorable to the ruling together with any adverse evidence that is uncontradicted. *Id.*

Primus contends that the cocaine evidence should have been suppressed because the search violated his right to be free from unreasonable search and seizure under the Fourth Amendment to the United States Constitution and Article One, Section 11 of the Indiana constitution because Labroi did not have the authority to consent to the search and reasonable officers would not have believed that she did.

■ The Fourth Amendment to the United States Constitution prohibits police from conducting warrantless searches and seizures except under limited circumstances. *Trowbridge v. State*, 717 N.E.2d 138, 143 (Ind.1999). The language of the Indiana Constitution, Article One, Section 11, mirrors the federal protection. *Id.* Although Section 11 appears to have been derived from the Fourth Amendment and shares the same language, we interpret and apply it independently from Fourth Amendment jurisprudence. *State v. Bulington*, 802 N.E.2d 435, 438 (Ind.2004); *Trowbridge*, 717 N.E.2d at 143. Rather than looking to federal requirements such as warrants and probable cause when evaluating Section 11 claims, we place the burden on the State to show that its intrusion was reasonable under the totality of the circumstances. *Bulington*, 802 N.E.2d at 438; *Clark*, 804 N.E.2d at 198. Section 11 should receive a liberal construction in its application to guarantee that people are free from unreasonable search and seizure. *Clark*, 804 N.E.2d at 199.

Here, we find the search reasonable under the totality of the circumstances. Officers stopped a car driven by Labroi that contained cocaine. Labroi stated that there was more cocaine at her residence in the cupboard in a tin can and gave the officers her consent to search her residence. Labroi informed the officers that the cocaine in her car and home belonged to Primus, with whom she and their child

lived. Labroi gave the address to the residence, described it, stated that she had lived there for the past several months and that she paid the bills for it and received mail there. She then gave the officers a key. Under these circumstances, it was reasonable for the officers to search Labroi's house based on her consent to the search.

■ The Fourth Amendment to the United States Constitution also protects citizens from unreasonable searches and seizures. *Krise v. State*, 746 N.E.2d 957, 961 (Ind.2001); *Creekmore v. State*, 800 N.E.2d 230, 233 (Ind.Ct.App.2003); *Buckley v. State*, 797 N.E.2d 845, 848 (Ind.Ct. App.2003). The Fourteenth Amendment extended to state governments the Fourth Amendment's requirements for constitutionally valid searches and seizures. *Sanchez v. State*, 803 N.E.2d 215, 219 (Ind.Ct. App.2004), *trans. denied; Creekmore*, 800 N.E.2d at 233; *Buckley*, 797 N.E.2d at 848.

■ Generally, a search warrant is a prerequisite to a constitutionally proper search and seizure. *Perry v. State*, 638 N.E.2d 1236, 1240 (Ind.1994); *Caldwell v. State*, 583 N.E.2d 122, 125 (Ind.1991); *Sanchez*, 803 N.E.2d at 219; *Sellmer v. State*, 800 N.E.2d 671, 676 (Ind.Ct.App. 2003). When a search is conducted without a warrant, the State has the burden of proving that an exception to the warrant requirement existed at the time of the search. *Krise*, 746 N.E.2d at 961; *Sanchez*, 803 N.E.2d at 219; *Sellmer*, 800 N.E.2d at 676; *Buckley*, 797 N.E.2d at 849. Warrantless searches and seizures inside the home are presumptively unreasonable. *Krise*, 746 N.E.2d at 961; *Buckley*, 797 N.E.2d at 848–49. However, one well-recognized exception to the warrant requirement is a voluntary and knowing consent to search. *Krise*, 746 N.E.2d at 961; *Perry*, 638 N.E.2d at 1240; *Sellmer*,

800 N.E.2d at 676; *Buckley*, 797 N.E.2d at 849; *Sallee v. State*, 785 N.E.2d 645, 655 (Ind.Ct.App.2003), *trans. denied, cert. denied,* —— U.S. ——, 124 S.Ct. 480, 157 L.Ed.2d 385. The theory underlying the consent exception is that, when an individual gives the State permission to search either his person or property, the governmental intrusion is presumably reasonable. *Buckley*, 797 N.E.2d at 849. The consent need not be given by the subject of the search, but may be given by a third party who has common authority over the premises. *Illinois v. Rodriguez*, 497 U.S. 177, 181, 110 S.Ct. 2793, 2797, 111 L.Ed.2d 148 (1990); *Trowbridge*, 717 N.E.2d at 143; *Perry*, 638 N.E.2d at 1240–41; *Caldwell*, 583 N.E.2d at 125. Common authority rests on the mutual use of the property by persons generally having joint access or control for most purposes, so that it is reasonable to recognize that any of the cohabitants has the right to permit the inspection in his or her own right and that the others have assumed the risk that one of their number might permit the common area to be searched. *Illinois v. Rodriguez*, 497 U.S. at 181, 110 S.Ct. at 2797; *Trowbridge*, 717 N.E.2d at 144; *Perry*, 638 N.E.2d at 1241; *Caldwell*, 583 N.E.2d at 125. The burden of establishing common authority rests upon the State. *Illinois v. Rodriguez*, 497 U.S. at 181, 110 S.Ct. at 2797.

■ A third party may consent to the search of the premises or property of another if actual authority exists. *Krise*, 746 N.E.2d at 967. Establishing actual authority requires a showing that there is a sufficient relationship to or mutual use of the property by persons generally having joint access or control for most purposes. *Id.* If actual authority cannot be shown, then facts demonstrating that the consenting party had apparent authority to consent could prove a lawful search. *Id.* Under the apparent authority doctrine, a

search is lawful if the facts available to the officer at the time would cause a person of reasonable caution to believe that the consenting party had authority over the premises. *Id.; Trowbridge,* 717 N.E.2d at 144. The State bears the burden of proving that the third party possessed the authority to consent. *Krise,* 746 N.E.2d at 967.

 Common authority is not to be implied from the mere property interest a third party has in the property. *Perry,* 638 N.E.2d at 1241. Thus, even when the invitation to search is accompanied by an explicit assertion that the person lives there, the surrounding circumstances could conceivably be such that a reasonable person would doubt its truth and not act upon it without further inquiry. *Illinois v. Rodriguez,* 497 U.S. at 188, 110 S.Ct. at 2801. As with other factual determinations bearing upon search and seizure, determination of consent to enter must be judged against an objective standard: would the facts available to the officer at the moment warrant a person of reasonable caution in the belief that the consenting party had authority over the premises. *Id.* If not, then warrantless entry without further inquiry is unlawful unless authority actually exists. *Id.* But if so, the search is valid. *Id.*

In *Krise,* 746 N.E.2d at 967, a defendant challenged the evidence obtained during a search of his home pursuant to the consent of his roommate. In upholding the search, our supreme court found that the roommate had actual authority to consent to it. The court explained that the undisputed facts showed that the defendant and the roommate owned and shared the home with joint access and mutual use. Under the circumstances, the court held that the defendant assumed the risk that his roommate would permit a search of common areas in the home. *Id.*

Another defendant raised a similar argument in *Perry,* 638 N.E.2d at 1241. In that case, officers stopped a car driven by the defendant's girlfriend; the car was found to contain cocaine. The girlfriend was arrested and transported to the police station. She waived her rights and told officers that the defendant gave her the cocaine to deliver. An officer then transported the girlfriend to the residence that she shared with the defendant and asked her to call the defendant and ask him to come to the same location. When he arrived, police arrested him. The girlfriend signed a consent to search form for the residence, and with the defendant's cooperation, police discovered money, drugs, and paraphernalia. Based on these facts, our supreme court upheld the search, noting that even if the police's belief that the girlfriend resided in the house was erroneous, the search was valid if the belief was reasonable. There, because the police reasonably believed that the girlfriend was a resident of the house and had the authority to consent to a search of the premises, the search was a valid consent search and did not violate the defendant's Fourth Amendment rights. *Id.*

 Here, Detective Ball testified that Labroi told him that she shared a home with Primus and their child and stated the address of the residence. She then told Detective Ball that Primus kept cocaine at the house and directed Detective Ball as to the exact location within the home where the cocaine was found—a cupboard. Ball confirmed that Labroi received mail at that address and that she paid the bills for the residence. Labroi explained that although the residence was held in Primus's name, the couple rented it from her mother. Labroi gave Detective Ball a key to the front door of the residence. Officers proceeded to the residence, where they found Primus nearby. From him, they confirmed that he and Labroi lived together at the address to which Labroi had directed Detective Ball and that Labroi was his girlfriend. These facts would warrant a person of reasonable caution to

believe that Labroi possessed authority to consent to the search. The search did not violate Primus's rights under the United States Constitution, and the evidence it produced is admissible. The trial court did not err.

■ Primus makes much of the fact that he was located at the search scene, while Labroi was not. He apparently contends that his right to refuse consent, as the party present, should outweigh Labroi's right to give consent. We acknowledge that our supreme court has stated that the consent of one who possesses common authority over a premises or its effects is valid as against the *absent,* nonconsenting person who shares the authority. *Overstreet v. State,* 783 N.E.2d 1140, 1159 (Ind.2003), *cert. denied,* —— U.S. ——, 124 S.Ct. 1145, 157 L.Ed.2d 1044 (2004); *Trowbridge,* 717 N.E.2d at 144 (emphasis added). However, one's authority to give consent is not dependent upon one's location. Either a party has authority to consent to a search, through common control of a premises, or he or she does not. The physical location of the person giving consent is irrelevant. We can envision circumstances in which the location of the consenting party may be of some relevance to the question of apparent authority. That is, where the consenting party is located may be a circumstance that tends to support a reasonable belief that the party has authority to consent to a search. However, here, Labroi, as a resident of the house with common authority over it, had actual authority to consent to the search, and the respective locations of Labroi and Primus are of no consequence.

Affirmed.

NAJAM, J., and RILEY, J., concur.