Larry D. BEST, Jr., Appellant–Defendant,

v.

STATE of Indiana, Appellee–Plaintiff.

No. 38A04–0406–CR–303.

Court of Appeals of Indiana.

Jan. 27, 2005.

Rehearing Denied April 14, 2005.

Kimberly A. Jackson, Indianapolis, IN, Attorney for Appellant.

Steve Carter, Attorney General of Indiana, Joby Jerrells, Deputy Attorney General, Indianapolis, IN, Attorneys for Appellee.

## OPINION

ROBB, Judge.

Larry Best, Jr. appeals from the trial court's denial of his motion to suppress evidence. We affirm.

### Issues

Best raises three issues for our review, which we consolidate and restate as whether the trial court properly denied his motion to suppress all evidence seized against him. The State raises one issue on cross-appeal, which we restate as whether the trial court properly found that the search warrant was facially defective.

### Facts and Procedural History

Joseph Fleming rented a mobile home located at 2687 East Treaty Line Road in Portland, Indiana, in March 2002 from his father-in-law. Fleming's father-in-law stored a camper trailer on the property, which Fleming was permitted to use. Best had been to Fleming's property a dozen or more times but had never stayed overnight. On or around December 3, 2002, Fleming gave Best and Tom Coby, Best's cousin, permission to use the camper trailer to manufacture methamphetamine.[1] In exchange for use of the camper trailer, Best agreed to give Fleming an "eight ball" of methamphetamine.

On December 6, 2002, a confidential informant ("C.I.") contacted Portland Police

---

1. In its Statement of Facts, the State claims, "[Best] never stayed overnight at the Treaty Line Road address, although he had used the camper 'a dozen or two' times to manufacture methamphetamine." Brief of Appellee at 2. The record, however, does not support this assertion. Rather, Fleming testified that even though Best had been to Fleming's property a dozen or two times, he had only used the camper trailer once to manufacture methamphetamine. See Tr. at 35.

Department Officer Judson Wickey and told Officer Wickey that Best and Coby would be manufacturing methamphetamine in the camper trailer at the Treaty Line Road property later that day. Officer Wickey conducted surveillance at both the Treaty Line Road property and Coby's residence at 631 East Water Street. Although Officer Wickey observed the camper trailer and certain vehicles that the C.I. stated would be at the residences, Officer Wickey did not see any illegal activity at either residence. Officer Wickey did, however, observe the C.I. leave the Treaty Line Road property at one point during the day.

Later that evening, the C.I. again contacted Officer Wickey and stated that a batch of methamphetamine had been manufactured that day in the camper trailer. The C.I. did not see the manufacturing take place but did see the methamphetamine that was produced. The C.I. further stated that Best had a bag of methamphetamine stored in a Marlboro Light cigarette pack. Based upon this information, Officer Wickey sought a search warrant to search the Treaty Line Road property and the camper trailer, which the trial court granted. During the execution of the search warrant at the Treaty Line Road property, police officers found various items used to manufacture methamphetamine in and around the camper trailer, including blister packs of pseudoephedrine, starter fluid, and a propane tank.

On that same day, Portland Police Department Officer Robert Myers proceeded to 631 East Water Street to arrest Best on an unrelated, outstanding warrant. En route, Officer Myers stopped a vehicle driven by Annette Lennartz, Coby's girlfriend and the owner of the East Water Street residence. Officer Myers explained that he was looking for Best and requested Lennartz's consent to search her residence for Best. She consented, and police officers entered her residence to search for Best. An officer found Best inside the residence and placed him under arrest. Subsequently, officers found methamphetamine in a cigarette pack that officers knew belonged to Best on the coffee table in Lennartz's residence.

The State ultimately charged Best with two counts of dealing in methamphetamine as Class A felonies: one count for knowingly manufacturing methamphetamine having a weight of three grams or more, and one count for possessing with the intent to deliver at least three grams of methamphetamine. Best filed a motion to suppress all evidence seized from the Treaty Line Road and the Water Street residences. After a hearing, the trial court denied Best's motion. Best sought and was granted certification of the trial court's denial for interlocutory appeal, and we accepted jurisdiction. This appeal ensued. Additional facts will be provided as necessary.

### Discussion and Decision

Best contends the trial court erred in denying his motion to suppress all evidence seized against him because the search pursuant to a warrant of the Treaty Line Road property and the warrantless search of the East Water Street residence violated the Fourth Amendment to the United States Constitution and Article I, Section 11 of the Indiana Constitution. We disagree.

### I. Standard of Review

When reviewing the denial of a motion to suppress evidence, we do not reweigh the evidence, and we consider conflicting evidence most favorable to the trial court's ruling. *Bocko v. State,* 769 N.E.2d 658, 664 (Ind.Ct.App.2002), *trans. denied.* We also consider the uncontested evidence that is most favorable to the defendant.

*Id.* We will affirm the trial court's judgment if it is sustainable on any legal grounds apparent in the record. *Meyers v. State*, 790 N.E.2d 169, 171 (Ind.Ct.App. 2003).

## II. Search of Treaty Line Road Property

Best first contends that because the search warrant for the Treaty Line Road property was facially defective, all evidence seized pursuant to the search should be suppressed. We must first determine, however, (1) whether Best can assert the protection of the Fourth Amendment;[2] and (2) whether Best had standing to challenge the search warrant under Article I, Section 11 of the Indiana Constitution.

### A. Fourth Amendment Protection

 A person's Fourth Amendment rights against unreasonable search and seizure are personal. *Minnesota v. Carter*, 525 U.S. 83, 88, 119 S.Ct. 469, 142 L.Ed.2d 373 (1998). In order to challenge a search as unconstitutional under the Fourth Amendment, a defendant must have a legitimate expectation of privacy in the place that is searched. *Id.*

In *Carter*, the defendants were sitting in a tenant's apartment bagging cocaine when a police officer observed their activity after receiving a tip from a confidential informant. Based on this observation, the police officer obtained a search warrant for the apartment, executed the warrant, and seized cocaine. The defendants had never been to the apartment before and had come for the sole purpose of packaging cocaine. They were only in the apartment for approximately two-and-a-half hours. The State ultimately charged the defendants, and the defendants moved to suppress the evidence found at the apartment. *Id.* at 85–87, 119 S.Ct. 469.

The United States Supreme Court held that any search did not violate the defendants' Fourth Amendment rights because the defendants did not have a legitimate expectation of privacy in the apartment. The Court stated,

> [A]n overnight guest in a home may claim the protection of the Fourth Amendment, but one who is merely present with the consent of the householder may not.

> [The defendants] were obviously not overnight guests, but were essentially present for a business transaction and were only in the home a matter of hours. There is no suggestion that they had a previous relationship with [the tenant], or that there was any other purpose to their visit.... While the apartment was a dwelling place for [the tenant], it was for [the defendants] simply a place to do business.

Property used for commercial purposes is treated differently for Fourth Amendment purposes from residential property. "An expectation of privacy in commercial premises, however, is different from, and indeed less than, a similar expectation in an individual's home." And while it was a "home" in which [the

2. The trial court and both parties framed this issue as whether Best had "standing" to challenge the search warrant under the Fourth Amendment. However, in *Minnesota v. Carter*, 525 U.S. 83, 119 S.Ct. 469, 142 L.Ed.2d 373 (1998), the United States Supreme Court stated, "in determining whether a defendant is able to show the violation of his (and not someone else's) Fourth Amendment rights, the 'definition of those rights is more properly placed within the purview of substantive Fourth Amendment law than within that of standing.'" *Id.* at 88, 119 S.Ct. 469 (quoting *Rakas v. Illinois*, 439 U.S. 128, 140, 99 S.Ct. 421, 58 L.Ed.2d 387 (1978)). Therefore, the more appropriate way to frame this issue is whether Best may assert the protection of the Fourth Amendment.

defendants] were present, it was not their home.

*Id.* at 90, 119 S.Ct. 469 (footnote and internal citation omitted). Because the court found the defendants had no significant connection to the apartment, the nature of the transaction was purely commercial, and the defendants were in the apartment a relatively short period of time, the defendants' status was closer to one simply permitted on the premises and, therefore, any search did not violate their Fourth Amendment rights.

■ Best argues that because he had an agreement to pay Fleming for the use of the camper trailer to manufacture methamphetamine, he can assert protection under the Fourth Amendment. Yet the facts in *Carter* are analogous to the facts in the instant case. Best was never an overnight guest at the Treaty Line Road property but was simply there to do business; that is, to manufacture methamphetamine. Since the property was being used by Best for purely commercial purposes, it is treated differently than property used for residential purposes. Furthermore, the undisputed evidence shows that Best never used the camper trailer as a dwelling place, but only for commercial purposes, and he was there only intermittently. Thus, like *Carter*, the search did not violate Best's Fourth Amendment rights because Best did not possess a legitimate expectation of privacy in the camper trailer.

B. Standing Under Article I, Section 11

■ In order to challenge evidence obtained as a result of a search and seizure under Article I, Section 11 of the Indiana Constitution, "a defendant must establish ownership, control, possession, or interest in either the premises searched or the

property seized." *Peterson v. State,* 674 N.E.2d 528, 534 (Ind.1996), *cert. denied,* 522 U.S. 1078, 118 S.Ct. 858, 139 L.Ed.2d 757 (1998). In the instant case, the trial court found that Best did not have standing under Article I, Section 11 for two reasons: (1) Best did not have an interest in either the premises searched or the property seized because on the date of Best's arrest, Best told police officers that he had never been to the Treaty Line Road property; and (2) because Best had no standing to object to the officers' entry onto the Treaty Line Road property, any items that the officers saw once they entered the premises they had a right to seize.

■ We agree with Best that the trial court erred in finding that he had no standing to challenge the search warrant under Article I, Section 11. Although Best initially contended he had never been to the Treaty Line Road property, at the suppression hearing, the undisputed evidence showed that Best had an interest in the property seized by the police. Fleming testified that none of the items seized by the police at the Treaty Line Road property belonged to him. Coby also testified that none of the items seized by the police from the Treaty Line Road property belonged to him. Finally, Best testified at the suppression hearing that all of the items seized by the police from the Treaty Line Road property belonged to him, and that he had bought and paid for the items. For these reasons, Best possessed an interest in the items seized, and therefore, the trial court erred in finding that Best did not have standing to challenge the search warrant under Article I, Section 11.[3]

---

**3.** The State contends the following: "While [Best] certainly had an interest in owning, controlling, or possessing what amounted to

precursors, mere possession of those items is a crime." Brief of Appellee at 14. Thus, the State argues, Best could not possess an inter-

## C. Invalidity of Search Warrant

Having held that Best had standing to challenge the validity of the search warrant under Article I, Section 11, we now address the State's contention that the trial court erred in finding that the search warrant issued for the Treaty Line Road property was invalid.[4]

### 1. Standard of Review

We review *de novo* a magistrate's determination that a substantial basis existed for issuing a search warrant. *Houser v. State*, 678 N.E.2d 95, 98 (Ind. 1997). "[S]ubstantial basis requires the reviewing court, with significant deference to the magistrate's determination, to focus on whether reasonable inferences drawn from the totality of the evidence support the determination." *Id.* at 99.

### 2. Invalidity

A search warrant must meet the statutory requirements under Indiana Code section 35–33–5–2. *Id.* at 98. Indiana Code section 35–33–5–2(b) provides that an affidavit for probable cause may be based on hearsay only if it:

(1) contain[s] reliable information establishing the credibility of the source and of each of the declarants of the hearsay and establishing that there is a factual basis for the information furnished; or

(2) contain[s] information that establishes that the totality of the circumstances corroborates the hearsay.

The reliability of hearsay may be established in the following ways: (1) the informant has given correct information in the past; (2) an independent investigation by the police corroborates the informant's statements; (3) the informant demonstrates some basis for her knowledge; or (4) the informant predicts conduct or activities that the suspect will perform that are not easily predicted. *Newby v. State*, 701 N.E.2d 593, 598 (Ind.Ct.App.1998).

According to the probable cause affidavit, the C.I. provided the following information to Officer Wickey on December 6, 2002: Best and Coby would be manufacturing methamphetamine later that day at the Treaty Line Road property, possibly in a camper trailer behind the residence; the residence was a mobile home with a semi and a white Ford Probe in the driveway; and Fleming occupied the residence. Officer Wickey conducted surveillance of the Treaty Line Road property and observed that the property consisted of a mobile home with a camper trailer behind the residence, a semi, and a white Ford Probe in the driveway. Later that evening, the C.I. again contacted Officer Wickey and stated that one batch of methamphetamine had already been manufactured on the Treaty Line Road property, and that the C.I. had not seen the manu-

---

est in those items because such an interest would be a crime. Yet the State fails to cite to any authority to support its proposition. Furthermore, the items that were seized by the police at the Treaty Line Road property included pseudoephedrine, starter fluid, and a propane tank. None of the items, standing alone, are necessarily illegal to possess.

4. Best also raises the issue of whether the trial court erred in finding that the doctrine of collateral estoppel did not apply in this case and operate to bar the State from arguing that the search warrant for the Treaty Line Road property was not defective, where a different trial court had already determined that the search warrant for the Treaty Line Road property was facially defective. We need not address this contention, however, because although the trial court found that the doctrine of collateral estoppel was inapplicable in this case, it nevertheless found that the search warrant for the Treaty Line Road property was facially defective. Thus, any potential error by the trial court would be harmless.

facturing take place, but saw the methamphetamine after it was manufactured.

The trial court found, and we agree, that the warrant was invalid because the totality of the circumstances did not corroborate the hearsay. The trial court stated that "[t]he informant gave information in regards to a description of the mobile home, a semi, a white Ford [P]robe in the driveway, a camper and other information which presumably could be ascertained by anyone driving by the location." Appellant's Appendix at 151. The affidavit supporting the search warrant did not demonstrate that the C.I. had given correct information in the past, nor did it demonstrate some basis for the C.I.'s knowledge, considering that the C.I. told Officer Wickey that she did not see the methamphetamine being manufactured. Furthermore, although Officer Wickey's investigation corroborated the C.I.'s information, as the trial court concluded, this information could be ascertained by anyone driving by the Treaty Line Road property. Finally, we note that not only did the trial court in the instant case find that the warrant was invalid, but the magistrate who initially issued the search warrant upon review found the search warrant to be invalid as well. For these reasons, the trial court did not err in finding that the search warrant for the Treaty Line Road property was invalid. Because no other exceptions to the warrant requirement apply, the search was illegal under Article I, Section 11.

### D. Good Faith Exception

The State next argues that even if we hold the search warrant was invalid, the evidence found at the Treaty Line Road property should not be suppressed for two reasons: (1) the evidence seized was in open view, so the police officers' observations of the items in open view were not a search; and (2) the police relied on the search warrant in good faith.

■■■ We note at the outset that the State is incorrect in its assertion that the evidence was seized in open view. The open view doctrine is only implicated in situations where an officer sees contraband from a place *where the officer is lawfully entitled to be*. *Justice v. State*, 765 N.E.2d 161, 165 (Ind.Ct.App.2002), *clarified on reh'g*, 767 N.E.2d 995 (Ind.Ct.App.2002). Because the search warrant in the instant case was invalid, the police officers were not entitled to be on the Treaty Line Road property. Additionally, the items seized were found in areas that were not visible from the road. Thus, the open view doctrine does not apply.

Indiana has codified the good faith exception, which provides that a trial court may not exclude evidence, even where the evidence was unlawfully obtained, if such evidence was obtained by a police officer in good faith. Ind.Code § 35–37–4–5. Evidence is obtained by a police officer in good faith where the evidence was obtained pursuant to

a search warrant that was properly issued upon a determination of probable cause by a neutral and detached magistrate, that is free from obvious defects other than nondeliberate errors made in its preparation, and that was reasonably believed by the law enforcement officer to be valid....

Ind.Code § 35–37–4–5(b)(1)(A).

■ Although the magistrate is responsible for determining whether the officer's affidavit establishes probable cause, the officer's reliance on the magistrate's determination must be objectively reasonable. *Hensley v. State*, 778 N.E.2d 484, 489 (Ind.Ct.App.2002). Thus, a search warrant may be so facially defective that

no reasonable officer could presume that it was valid. *Id.*

 In the instant case, we agree with the State that the search warrant was not so facially defective that no reasonable police officer could presume that it was valid. Officer Wickey spoke with the C.I. twice on December 6 and obtained information about Best and Coby's methamphetamine manufacturing. Although most of the hearsay that Officer Wickey corroborated through surveillance involved facts that anyone in that location could have observed, Officer Wickey also observed the C.I. leave the Treaty Line Road property that day. Thus, a reasonable officer could presume that the hearsay the C.I. provided was sufficiently corroborated by his surveillance.

Furthermore, Best does not point to any support for his contention that the warrant was so defective that no reasonable officer would presume it to be valid. Instead, Best argues that evidence of the officers' bad faith reliance on the warrant was shown at the suppression hearing when there was a discrepancy in one officer's testimony. The State later recalled the officer, however, and cleared up the discrepancy. This, standing alone, does not amount to a bad faith reliance. For these reasons, the good faith exception applies, and the trial court properly concluded that Best's motion to suppress all evidence found at the Treaty Line Road property should be denied.

### III. Warrantless Search of East Water Street Residence

Best next contends the trial court erred in denying his motion to suppress evidence found at the East Water Street residence during a warrantless search because the search violated both the Fourth Amendment and Article I, Section 11 of the Indiana Constitution. We disagree.[5]

At the suppression hearing, Officer Myers testified that he obtained consent from Lennartz, the owner of the East Water Street residence, to search the home for Best. After locating and arresting Best inside the home, Best asked Portland Police Department Officer Josh Stephenson for a cigarette. Best told Officer Stephenson that two Marlboro cigarette packs on the coffee table in the living room belonged to him. Officer Stephenson picked up one pack and gave Best a cigarette.

Meanwhile, Officer Myers spoke with Lennartz and asked if she would consent to a search of her house for drugs. She consented, and Officer Myers told the other officers on the scene that he had obtained consent to search the house for drugs. Portland Police Department Officer Steve Schlecty entered the residence, saw the Marlboro cigarette packs, and opened them. He found several packages of methamphetamine.

Best initially contends that the consent to search the residence for drugs was obtained *after* Officer Schlecty found the methamphetamine in the cigarette pack. Had this been the case, we would agree with Best that the search of the cigarette pack would have been unconstitutional. At the suppression hearing, Officer Myers initially testified that he obtained Lennartz's consent to search her residence for drugs *after* another officer found the methamphetamine. Yet the State later recalled Officer Myers to the stand, and Officer Myers admitted that he might have been mistaken about whether he received the consent to search for drugs before or after the methamphetamine was found. Furthermore, Officer Schlecty, Jay County

---

5. Because Best stayed over two or three nights at the East Water Street residence, the State concedes that he has standing to challenge the warrantless search.

Sheriff's Department Deputy Patrick Wells, and Lennartz all testified that consent to search the East Water Street residence for drugs was obtained *before* the methamphetamine was found. Because we consider conflicting evidence most favorable to the trial court's ruling, and because the trial court found that the search and seizure of the methamphetamine was not unconstitutional, we conclude that the consent to search the residence for drugs was obtained from Lennartz *before* Officer Schlecty opened the cigarette pack and discovered methamphetamine.

### A. Fourth Amendment

■ The Fourth Amendment protects against unreasonable searches and seizures by generally requiring search warrants precedent to a lawful search. *Stephens v. State,* 735 N.E.2d 278, 282 (Ind. Ct.App.2000), *trans. denied.* Yet the warrant requirement is subject to certain exceptions, such as when a valid consent to the search is obtained. *Krise v. State,* 746 N.E.2d 957, 961 (Ind.2001).

■ Because it is an exception to the warrant requirement, a consensual search is reasonable only if it is kept within the scope of the consent given. *Buckley v. State,* 797 N.E.2d 845, 849 (Ind.Ct.App. 2003). The standard for measuring the scope of one's consent to a search under the Fourth Amendment is that of objective reasonableness; in other words, what would a reasonable person have understood the scope of the consensual search to be based on the exchange between the officer and the consenter? *Id.* Furthermore, the scope of a consensual search is generally measured by the object to be searched and the consenter's imposed limitations upon the search. *Id.*

In *Krise,* officers arrived at Krise's house to serve a writ of body attachment upon her. Krise allowed the officers to enter her home to discuss the writ. While inside, the officers observed a pipe in plain view and smelled the odor of burnt marijuana. Neither Krise nor her roommate claimed ownership of the pipe. One officer transported Krise to jail, and another officer asked Krise's roommate for consent to search the house for drugs. The roommate consented. In the bathroom, officers found Krise's purse and searched it. They uncovered drugs in her purse and charged Krise with possession of the drugs. Krise filed a motion to suppress evidence of the drugs found in her purse, which was denied. 746 N.E.2d at 960.

In deciding whether the search of Krise's purse violated the Fourth Amendment, our supreme court stated,

Rather than considering a third-party's authority to consent to the general search of the home as "all encompassing" to the search of every container found inside the home, we hold that the inspection of closed containers that normally hold highly personal items requires the consent of the owner or a third party who has authority—actual or apparent—to give consent to the search of the container itself.

In reaching this conclusion, we find that the type of container is of great importance in reviewing third-party consent search cases. Absent one of the well-delineated exceptions to the warrant requirement, "[a] container which can support a reasonable expectation of privacy may not be searched, even on probable cause, without a warrant."

*Id.* at 969 (quoting *United States v. Jacobsen,* 466 U.S. 109, 120 n. 17, 104 S.Ct. 1652, 80 L.Ed.2d 85 (1984)).

The court next applied a two-step analysis to determine whether the container, Krise's purse, supported a reasonable expectation of privacy, and therefore could not be searched. First, the court exam-

ined whether Krise held a subjective expectation of privacy in the area and the personal item searched. The court concluded that Krise held a subjective expectation of privacy in the bathroom, which was a more private area of the home and not accessible to the general public, as well as in the item searched: her purse. *Krise*, 746 N.E.2d at 970.

Next, the court considered whether Krise's expectation of privacy was objectively reasonable. The court concluded that it was, stating "we believe that society accepts as objectively reasonable that persons have a legitimate expectation of privacy in their purses and other closed containers that normally hold highly personal items." *Id.*

■ In the instant case, the evidence is undisputed that the cigarette packs on the coffee table belonged to Best. Therefore, we must determine whether the cigarette packs supported a reasonable expectation of privacy. Applying the two-step analysis, we need not decide whether Best held a subjective expectation of privacy in the cigarette packs because we conclude that even if Best did hold an expectation of privacy in the cigarette packs, such an expectation would not be reasonable. Cigarette packs do not normally hold highly personal items. Furthermore, the packs were sitting on a coffee table in the living room and easily accessible to visitors, since the living room is an area in the home generally accessible to visitors. For these reasons, cigarette packs do not support a reasonable expectation of privacy, and Lennartz's consent to search her home for drugs included a consent to search the cigarette packs on the coffee table.

### B. Article I, Section 11

■ Even though Article I, Section 11's words parallel the Fourth Amendment's language, it has unique vitality.

*State v. Stamper,* 788 N.E.2d 862, 864–65 (Ind.Ct.App.2003), *trans. denied.* The Fourth Amendment establishes a minimum level of protection to all citizens; Indiana imposes greater restrictions upon police activity under its own constitutional law. *Id.* at 864. Rather than looking to Fourth Amendment jurisprudence to evaluate Section 11 claims, we place the burden on the State to show that, under the totality of the circumstances, the police activity was reasonable. *Id.* at 865.

■ Considering the totality of the circumstances, the police activity in the instant case was reasonable. The evidence is undisputed that the police officers at the East Water Street residence knew that the cigarette packs on the coffee table belonged to Best. Nevertheless, the officers had obtained consent from Lennartz, the homeowner, to search her house for drugs. Furthermore, the cigarette packs were lying on the coffee table in the living room, and Best had earlier asked Officer Stephenson to get him a cigarette from one of the packs. Thus, the officers' activity in looking inside the cigarette packs was reasonable, considering that they had obtained consent to search the house for drugs, and Best did not appear to have any legitimate expectation of privacy in the cigarette packs.

### Conclusion

We conclude that the search of the Treaty Line Road property did not violate Best's Fourth Amendment rights. Nevertheless, Best had standing under Article I, Section 11 to challenge the search. The trial court did not err in finding that the search warrant was facially defective. However, because the police officers relied on the search warrant in good faith, the trial court correctly concluded that the evidence found at the Treaty Line Road property should not be suppressed. The

trial court properly found that the evidence seized at the East Water Street residence should not be suppressed. For these reasons, we affirm the trial court's decision.

Affirmed.

KIRSCH, C.J., concurs.

BAKER, J., concurs with separate opinion.

BAKER, Judge, concurring.

I concur with the majority's holding that the evidence seized by the police officers in these circumstances should not have been suppressed. But I part ways with the determination that Best's Fourth Amendment rights may not have been violated with respect to the Treaty Line Road Property. The majority observes that Best was never an overnight guest at the Treaty Line Road property, and he was only there with Fleming's permission to manufacture methamphetamine. Op. at ——. Thus, Best could not establish that he had a reasonable expectation of privacy sufficient to present a Fourth Amendment challenge. *See id.*

Granted, the record shows that Best used the premises for commercial purposes and he thus may not enjoy the identical rights under the Fourth Amendment that an owner or occupant of the premises might have. That distinction is of no moment here, however, inasmuch as the record reflects—and the majority so notes—Best testified at the suppression hearing that all of the items seized by the police from the Treaty Line Road property belonged to him. To be sure, both Coby and Fleming denied that any of the items belonged to them. Hence, inasmuch as Best admitted owning the property that was seized, it is my belief that he enjoyed a reasonable expectation of privacy sufficient to challenge the search warrant under the Fourth Amendment. For that reason, the same rationale should apply in these circumstances as that which applies to the determination that Best may assert a claim under Article I, Section 11. To hold otherwise might imply that a defendant may only raise a Fourth Amendment claim in a residence, and never upon premises where only "business" is conducted.

Be that as it may, I also agree with the rationale espoused by the majority that the good faith exception applies in these circumstances. Hence, the trial court properly determined that the evidence seized at the Treaty Line Road premises should not have been suppressed. For these reasons, I also vote to affirm the trial court's decision.