**Donald Edward HILL, Appellant–Defendant,**

v.

**STATE of Indiana, Appellee–Plaintiff.**

No. 59A05–0405–CR–260.

Court of Appeals of Indiana.

April 14, 2005.

David A. Smith, McIntyre & Smith, Bedford, IN, Attorney for Appellant.

Steve Carter, Attorney General of Indiana, Justin F. Roebel, Deputy Attorney General, Indianapolis, IN, Attorneys for Appellee.

## OPINION

BARNES, Judge.

### Case Summary

Donald Hill appeals his conviction and sentence for Class B felony dealing in a narcotic. We affirm.

### Issues

Hill raises five issues, which we consolidate and restate as:

I. whether the trial court properly admitted evidence obtained during a warrantless search of his home;

II. whether his statements to the police were voluntarily made;

III. whether there is sufficient evidence to support his conviction; and

IV. whether his sentence is proper.

### Facts

On May 13, 2002, Officer Paul Andry, a sergeant with the Indiana State Police, received an anonymous tip that Hill was manufacturing methamphetamine in a trailer park. Officer Andry drove through the trailer park and was told that Hill's residence was the one with a maroon Mercury Sable in the driveway. Not observing anything suspicious, Officer Andry left.

That same day, Officer Andry received a report that a young man, S.R., had been arrested after attempting to shoplift batteries from Wal–Mart. S.R. indicated that Hill's wife, Michelle, took him to Wal–Mart to steal lithium batteries in exchange for stereo speakers. S.R. was supposed to meet Michelle at her car, a maroon Mercury Sable. On his way to her car, S.R. was caught with the batteries and empty pseudoephedrine packs that Michelle asked him to throw away at his house.

Based on this information, Officer Andry went to a parking lot from which he could observe the Hills' trailer. Officer Andry saw the maroon Mercury Sable in the driveway. Officer Andry also observed Hill and a child burning trash in barrels in his yard. The trash included aerosol start-

ing fluid cans. Concerned that Hill was destroying evidence, Officer Andry decided to investigate further and called for back up.

When Officer Lamb arrived to assist Officer Andry, the two approached the trailer and noticed the strong smell of ether. The officers identified themselves to Hill and Michelle, who were standing outside, and informed them that the officers were investigating the manufacturing of methamphetamine. The officers extinguished the fire and noticed several starting fluid cans with holes in the bottoms and cans of camp fuel in the fire.

At that point, Officer Andry Mirandized the couple and questioned Hill while Officer Lamb questioned Michelle. Hill told Officer Andry that he had been paid fifty dollars the night before to allow someone to "cook" methamphetamine at his trailer and that he was just cleaning up. Tr. p. 228. Hill indicated that there was a propane tank filled with anhydrous ammonia under a nearby vacant trailer. Hill stated that his fingerprints would be on the tank because he carried it for one of the men who had "cooked" methamphetamine the previous night.

At some point, Michelle consented to a search of the trailer. During the search, the officers found a mirror with a small pipe on it, a handgun, several jars, starting fluid cans with holes in the bottoms, an empty salt container, a coffee grinder, an aspirin bottle with pseudoephedrine tablets, and a bottle of acetone. The officers arrested Hill.

On May 15, 2002, the State charged Hill with Class B felony dealing in a narcotic. Prior to the trial, Hill filed a motion to dismiss, which the trial court denied. Following the jury trial, Hill was found guilty as charged. The trial court sentenced Hill to fifteen years. Hill filed a motion to correct error, which was denied. Hill now appeals.

## Analysis

### I. Warrantless Search

Hill first argues that the trial court improperly allowed the State to introduce evidence obtained during the search of his trailer because the officers did not have a warrant. The admission and exclusion of evidence falls within the sound discretion of the trial court. *Buckley v. State*, 797 N.E.2d 845, 848 (Ind.Ct. App.2003). We review the admission of evidence only for an abuse of discretion, which occurs when the decision is clearly against the logic and effect of the facts and circumstances. *Id.* The Fourth Amendment protects persons from unreasonable search and seizure. *Id.* A warrantless search and seizure inside the home is presumptively unreasonable. *Id.* at 848–49. "When a search is conducted without a warrant, the State has the burden of proving that an exception to the warrant requirement existed at the time of the search." *Id.* at 849.

### A. Knock and Talk

Hill argues that the search of his home was improper because it was akin to an illegal "knock and talk." He contends:

> In the instant case, the record clearly suggests that Andry and Lamb simply stormed Appellant's home on the single fact that Appellant had a fire burning [sic] the backyard. There was no other corroborative evidence at all found by Andry in the course of his investigation to link Appellant to the manufacturing of methamphetamine.

Appellant's Br. p. 13.

A "knock and talk" investigation involves police officers knocking on the door of a house, identifying themselves, asking to talk to the occupant about a criminal

complaint, and eventually requesting permission to search the house. *Hayes v. State*, 794 N.E.2d 492, 496 (Ind.Ct.App. 2003), *trans. denied.* If successful, a "knock and talk" allows police officers to gain access to a house and conduct a search without probable cause. *Id.* "While not per se unlawful, the knock and talk procedure 'pushes the envelope' and can easily be misused." *Id.* at 497.

■ Contrary to Hill's characterization, the facts before us do not amount to an improper "knock and talk." After receiving an anonymous tip concerning the manufacturing of methamphetamine, Officer Andry learned that S.R. had stolen lithium batteries for Michelle and observed Hill burning trash, including certain precursors to the manufacture of methamphetamine. Officers Andry and Lamb then approached Hill and Michelle, who were in the yard, not in the house. The officers identified themselves. Mirandized the couple, and Michelle eventually consented to a search of the residence. This is not a situation where police officers knocked on the door of a house without any evidence of illegal activity. The officers' actions did not amount to a misuse of the "knock and talk" procedure.

### B. Consent

Hill also asserts that Michelle was not in a position to consent to a search of the trailer. Generally, a search warrant is a prerequisite to a lawful search and seizure. *Primus v. State*, 813 N.E.2d 370, 374 (Ind. Ct.App.2004). "When a search is conducted without a warrant, the State has the burden of proving that an exception to the warrant requirement existed at the time of the search." *Id.* One well-recognized exception to the warrant requirement is a voluntary and knowing consent to search. *Id.*

■ A third party who has common authority over the premises may give consent to search. *Id.*

Common authority rests on the mutual use of the property by persons generally having joint access or control for most purposes, so that it is reasonable to recognize that any of the cohabitants has the right to permit the inspection in his or her own right and that the others have assumed the risk that one of their number might permit the common area to be searched.

*Id.* A third party may consent to a search if actual or apparent authority exists. *Id.* Actual authority is established by showing that there is a sufficient relationship to or mutual use of the property by persons generally having joint access or control for most purposes. *Id.* "Under the apparent authority doctrine, a search is lawful if the facts available to the officer at the time would cause a person of reasonable caution to believe that the consenting party had authority over the premises." *Id.* at 374–75.

■ Hill argues that Michelle did not have authority to consent to the search of the trailer because the couple was separated and contemplating divorce. However, the mere fact that Michelle sometimes stayed at her mother's house does not in and of itself undermine her actual or apparent authority over the premises. Even if the officers were aware that the couple was considering divorce, it is undisputed that they were still married and that Michelle was at the trailer with the children. Further, Michelle was very familiar with the contents of the trailer, as she pointed out various precursors to the police. Michelle also indicated to Officer Lamb that she stayed at the trailer some of the time and with her mother some of the time. Under these circumstances, Michelle's con-

sent to search was valid under both the doctrines of actual and apparent authority.

## II. Hill's Statements to Police

 Hill argues that the trial court improperly allowed his statements to the officers into evidence because the statements were not voluntarily made. For a confession to be admissible, the State must show that it was voluntarily given. *Washington v. State,* 808 N.E.2d 617, 622 (Ind. 2004). "Voluntariness is determined in light of the totality of the circumstances surrounding the interrogation." *Clark v. State,* 808 N.E.2d 1183, 1191 (Ind.2004). We consider the length, location, and continuity of the interrogation, and the maturity, education, physical condition, and mental health of the defendant. *Id.* To be voluntary, we must conclude that inducement, threats, violence, or other improper influences did not overcome the defendant's free will. *Id.*

 Officer Andry testified that he informed Hill and Michelle of their Miranda rights. Hill argues, however, that because these warnings were not in writing or otherwise recorded, his confession was not voluntary. Hill provides no authority for his assertion that he must be informed in writing of his rights or that he must execute a written waiver of those rights, and we find none. In fact, our supreme court has held, "[a]n express written or oral waiver of rights is not necessary to establish a waiver of Miranda rights." *Carter v. State,* 730 N.E.2d 155, 157 (Ind.2000).

Further, there is no indication that Hill's statements to the officers were anything other than voluntarily made. Hill does not argue, nor does the record suggest, that the length, location, and continuity of the interrogation was unreasonable or that he lacked the maturity, education, physical condition, and mental health to waive his Miranda rights. Also, there is no indication of any inducement, threats, violence, or other improper influences that were used to overcome Hill's free will. We find no error.

## III. Sufficiency of the Evidence

 Hill argues that there is insufficient evidence to support his conviction for Class B felony dealing in a narcotic. In reviewing a claim of insufficient evidence, we will affirm the conviction unless, considering only the evidence and all reasonable inferences favorable to the judgment, we conclude that no reasonable factfinder could find the elements of the crime proven beyond a reasonable doubt. *Bethel v. State,* 730 N.E.2d 1242, 1243 (Ind.2000). We neither reweigh the evidence nor judge the credibility of the witnesses. *Id.*

 Hill contends that because no methamphetamine was found on the premises, Officer Andry could not pinpoint when the manufacturing occurred, and the laboratory was not operational at the time of Hill's arrest, the State did not establish the elements of the offense. A person who knowingly or intentionally manufactures methamphetamine commits dealing in methamphetamine. Ind.Code § 35–48–4–1. The charging information provided in part, "on or about May 13, 2002, Donald Edward Hill did knowingly manufacture Methamphetamine, a narcotic drug classified in schedule II . . . ."

Officer Andry observed Hill burning starting fluid cans with holes punched in the bottoms and found a propane tank filled with anhydrous ammonia near Hill's trailer. Also, Hill admitted that someone had made methamphetamine at his trailer the previous night. During a search of the trailer, the officers found a mirror with a small pipe on it, a handgun, several jars, starting fluid cans with holes in the bottoms, an empty salt container, a coffee grinder, an aspirin bottle with pseu-

doephedrine tablets, and a bottle of acetone. This evidence is sufficient to support Hill's conviction for manufacturing methamphetamine regardless of the fact no finished methamphetamine was found on the premises. *See Bush v. State,* 772 N.E.2d 1020, 1023 (Ind.Ct.App.2002) (concluding that the reasonable fact finder could certainly conclude that Bush manufactured methamphetamine based upon the circumstantial evidence of its production), *trans. denied.*

### IV. Sentence

Hill contends that he was improperly sentenced to an enhanced sentence of fifteen years because the jury did not find beyond a reasonable doubt the factual basis for the aggravators the trial court used to enhance his sentence. Hill relies on the Supreme Court decisions *Apprendi v. New Jersey,* 530 U.S. 466, 120 S.Ct. 2348, 147 L.Ed.2d 435, (2000) and *Blakely v. Washington,* 542 U.S. 296, 124 S.Ct. 2531, 159 L.Ed.2d 403 (2004). Our supreme court recently concluded that *Blakely* applies to Indiana's sentencing scheme and held "that the sort of facts envisioned by *Blakely* as necessitating a jury finding must be found by a jury under Indiana's existing sentencing laws." *Smylie v. State,* 823 N.E.2d 679, 686 (Ind.2005).

■ With this in mind, however, the exception to this rule announced in *Apprendi* is applicable to this case. *Apprendi* held that any fact *other than a prior conviction* that increases a penalty beyond the statutory maximum must be submitted to a jury and proved beyond a reasonable doubt. *Apprendi,* 530 U.S. at 490, 120 S.Ct. at 2362–63. The court reasoned that the procedural safeguards attached to a prior conviction mitigated the due process and Sixth Amendment concerns otherwise implicated in allowing a judge to determine a "fact" increasing punishment beyond the maximum of the statutory range. *Id.* at 488, 120 S.Ct. at 2362.

■ Although Hill asserts that the trial court's sentencing order makes no findings as to aggravators or mitigators, we examine both the written sentencing order and the trial court's comments at the sentencing hearing to determine whether the trial court adequately explained the reasons for the sentence. *See Boner v. State,* 796 N.E.2d 1249, 1255 (Ind.Ct.App.2003). At the sentencing hearing, the trial court recognized several aggravators before it enhanced Hill's sentence. One such factor was Hill's criminal history, which the trial court emphasized. Hill served time in a juvenile facility in Florida for burglary and was convicted of aggravated robbery in Tennessee. In Indiana, Hill was convicted of Class D felony possession of stolen property. A single aggravating factor is adequate to justify an enhanced sentence. *Powell v. State,* 769 N.E.2d 1128, 1135 (Ind.2002). Thus, Hill's enhanced sentence is proper based on his criminal history.

### Conclusion

The trial court properly admitted evidence obtained during the officers' warrantless search of Hill's trailer, his statements to the officers were voluntarily made, there is sufficient evidence to support his conviction, and his sentence is proper. We affirm.

Affirmed.

MAY, J., and DARDEN, J., concur.