Walter STARKS, Appellant–Defendant,

v.

STATE of Indiana, Appellee–Plaintiff.

No. 49A02–0502–CR–163.

Court of Appeals of Indiana.

April 27, 2006.

Rehearing Denied June 30, 2006.

Transfer Denied Aug. 24, 2006.

---

James C. Spencer, Indianapolis, for Appellant.

Steve Carter, Attorney General Of Indiana, Mara McCabe, Deputy Attorney General, Indianapolis, for Appellee.

## OPINION

ROBB, Judge.

Walter Starks was charged with dealing in cocaine as a Class A felony, unlawful possession of a firearm by a serious violent felon as a Class B felony, possession of cocaine as a Class C felony, possession of cocaine and a firearm as a Class C felony, and carrying a handgun without a license as a Class A misdemeanor. He now brings this interlocutory appeal challenging the trial court's denial of his motion to suppress evidence. We affirm.

### Issue

Starks raises three issues for our review, which we consolidate and restate as whether the trial court properly denied Starks' motion to suppress evidence.

### Facts and Procedural History

On the evening of January 17, 2003, Officer Michael Bragg of the Indianapolis Police Department conducted a traffic stop on Herbert Preston. Preston told Officer Bragg that he had just left a house located at 4611 East 34th Street, and that a heavy-set, black male wearing a white t-shirt whose first name was Walter was selling narcotics at the house. He also stated that this individual was armed with a semi-automatic handgun, and that he liked to show the gun to people in the house.

Later that evening, Dellila Alexander flagged down Officer Bragg. She told him

that her eighty-three-year-old grandmother was Hazel Civils, and that Civils owned the home located at 4611 East 34th Street. Alexander was upset because she believed that a heavy-set, black male wearing a white t-shirt whose name was Walter was trying to take over Civils' home and was possibly dealing drugs there. She told Officer Bragg that when she went to Civils' residence, she noticed that a makeshift door had been erected as one entered the side of the home that said, "Stay out." Transcript at 61. Alexander noted that she saw the individual she identified as Walter walking around Civils' house with his shoes off and only his socks on, acting like he was running the house.

Based on the information from Preston and Alexander, Officer Bragg, along with Officers Darrell Patton and Patrick McPherson, went to 4611 East 34th Street. Before approaching the residence, the officers noticed a number of people going into and coming out of the home. The officers then went up to the house and knocked on the door. Edward Civils ("Edward"), Civils' grandson who was living at the residence, answered the door. Officer Patton informed Edward that they were there to check on the welfare of Civils. Edward stated that this was no problem, and that Civils was in her bedroom. He explained that Civils could not come to the door because one of her legs was partially amputated. Edward let the officers inside the home and escorted Officer Patton to Civils' bedroom.

Officer Patton explained to Civils Alexander's concerns about problems at the residence, and that he was there to check on her welfare. Civils told Officer Patton that the residence was very disruptive. She stated that there was a lot of noise coming from the basement, with people going up and down the stairs to the basement and coming and going from the resi-dence. Civils indicated that the noise was very disturbing to her. She informed Officer Patton that she and Edward lived in the house, and that she was not aware of anybody else living in the home. Officer Patton testified that Civils told him that she knew of Starks but was not aware that he was in her residence. Believing that Civils owned the residence, Officer Patton asked her for permission to search the house for illegal drugs and weapons, and to find out if there were any individuals present whom Civils did not want in the residence. Officer Patton did not testify to what Civils' answer was to this question. No other officers were present in Civils' bedroom during Officer Patton's conversation with Civils. At her deposition, Civils stated that she remembered the police coming to her home but could not remember the exact date that this occurred. On cross-examination, though, Civils testified that she did not remember the police coming to her home.

While Officer Patton was speaking with Civils, Officers McPherson and Bragg noticed a piece of plywood with the words "stay out" written on it that was blocking the stairway to the basement. Prior to entering the residence, Officer McPherson stated that he had been informed that a black male identified as Walter who was armed with a handgun was staying in the basement but was not residing in the home. In order to find this armed individual, the officers moved the piece of plywood and went down to the basement. On the left side of the basement, the officers saw a television, a couch, a bed, and a recliner chair. Officer Bragg testified that it looked like someone was living in this area. Officer McPherson saw a black male sitting on the couch that fit the description given by Preston and Alexander of the individual who was armed and selling drugs out of the residence. This individual was later determined to be Starks. Stick-

ing out from underneath the couch, Officer McPherson saw the butt of a gun. Officer McPherson asked Starks to stand up and placed him in handcuffs.

Officers McPherson and Bragg took no further action until Officer Patton came down to the basement and told them that they had permission to search the residence. Officer Patton said that Civils stated that the only person who should be in the home was her grandson Edward. The couch that Starks had been sitting on was moved, and underneath the officers found a handgun and cocaine. Eight hundred and thirty-one dollars was also found on Starks' person. The State later charged Starks with dealing in cocaine as a Class A felony, unlawful possession of a firearm by a serious violent felon as a Class B felony, possession of cocaine as a Class C felony, possession of cocaine and a firearm as a Class C felony, and carrying a handgun without a license as a Class A misdemeanor.

On March 22, 2004, Starks filed a motion to suppress the evidence seized at Civils' house arguing that the warrantless search of the residence violated his rights under the Fourth Amendment to the United States Constitution and Article 1, Section 11 of the Indiana Constitution. After holding a hearing, the trial court denied Starks' motion finding that there was consent to enter the premises. Starks sought permission to file an interlocutory appeal, which we granted on March 29, 2005, and this appeal ensued.

### Discussion and Decision

Starks argues that the trial court erred in denying his motion to suppress evidence. We disagree.

### I. Standard of Review

Our review of the denial of a motion to suppress is similar to other claims challenging the sufficiency of the evidence. *Johnson v. State*, 829 N.E.2d 44, 47 (Ind.Ct.App.2005), *trans. denied.* We will not reweigh the evidence, and we consider conflicting evidence most favorable to the trial court's ruling. *Carroll v. State*, 822 N.E.2d 1083, 1085 (Ind.Ct.App. 2005). "Unlike typical sufficiency reviews, however, we will consider not only the evidence favorable to the judgment, but also the uncontested evidence favorable to the defendant." *Id.* We will affirm the trial court's ruling if it is sustainable on any legal grounds apparent in the record. *Best v. State*, 821 N.E.2d 419, 423 (Ind.Ct. App.2005), *trans. denied.*

### II. Standing

As a preliminary matter, the State contends that Starks does not have standing to challenge the officers' search of the residence because he did not have a reasonable expectation of privacy in any part of the house. Starks argues that the officers' search of the residence violated his rights under the Fourth Amendment and Article 1, Section 11. A person's rights against unreasonable search and seizure under the Fourth Amendment are personal. *Id.* at 424. To challenge a search as unconstitutional under the Fourth Amendment, a defendant must have a legitimate expectation of privacy in the place that is searched. *Id.* "In order to challenge evidence obtained as a result of a search and seizure under Article 1, Section 11 of the Indiana Constitution, 'a defendant must establish ownership, control, possession, or interest in either the premises searched or the property seized.'" *Id.* at 425 (quoting *Peterson v. State*, 674 N.E.2d 528, 534 (Ind.1996), *cert. denied*, 522 U.S. 1078, 118 S.Ct. 858, 139 L.Ed.2d 757 (1998)).

In ruling on Starks' motion to suppress, the trial court concluded that Starks

had standing. We cannot say that this conclusion was erroneous. Edward testified that at the time of the search, Starks was living at the residence. When he entered the basement, Officer Bragg saw a television, a couch, a recliner chair, and a bed. He believed that someone was living in this area. Based on this evidence, the trial court properly concluded that Starks had standing to challenge the propriety of the search.

■ The State also contends that Starks has waived any claim under Article 1, Section 11 because he makes no separate analysis of this issue. We note that in his motion to suppress and in his brief, Starks argues that the officers' search of the home violated his rights under Article 1, Section 11. Starks' brief does not make a separate analysis of his Article 1, Section 11 claim or state our standard for reviewing such claims. In his reply brief, though, Starks states our standard for reviewing Article 1, Section 11 claims. Because Starks raised this claim in his motion to suppress and his brief, and because he stated our standard for reviewing such claims in his reply brief, Starks has not waived his Article 1, Section 11 claim.

### III. Officers Entry Into the Residence

Starks seems to argue that the officers' initial entry into the home was improper. He points out that at the hearing, Edward testified that he heard knocking on the door. When he went to answer the door, he found the officers already inside the house. Because the officers did not have a search warrant or permission to enter the house, Starks concludes that the officers' entry into the house was unconstitutional.

However, Officer Patton contested Edward's testimony. Pursuant to our standard of review, we only consider evidence favorable to the trial court's judgment and any uncontested evidence favorable to the

defendant. *Carroll*, 822 N.E.2d at 1085. Because Edward's testimony was contested, we need only consider Officer Patton's testimony, which was favorable to the judgment. Officer Patton stated that when he knocked on the door, Edward answered it. Officer Patton explained to Edward that he was there to check on the welfare of Civils. Edward said that Civils could not come to the door because she had an amputated leg. He let the officers in, and then escorted Officer Patton to Civils' bedroom.

■ We have previously stated that a third party may consent to police officers entering onto the property of another and searching the premises if actual authority exists. *Primus v. State*, 813 N.E.2d 370, 374 (Ind.Ct.App.2004). "Establishing actual authority requires a showing that there is a sufficient relationship to or mutual use of the property by persons generally having joint access or control for most purposes." *Id.* Here, Edward was Civils' grandson and was living at the residence. Although Edward did not give the officers consent to search the house, Officer Patton's testimony reveals that he did allow them to enter the residence. As Civils' grandson and a resident of the home, Edward had the authority to admit the officers into the house. Therefore, the officers' initial entry into the home did not violate the Fourth Amendment or Article 1, Section 11.

### IV. Consent to Search

■ Starks argues that the warrantless search of the residence violated his rights under the Fourth Amendment and Article 1, Section 11 because the State failed to present sufficient evidence to prove that Civils consented to the search. Using the same language, the Fourth Amendment and Article 1, Section 11 guarantee an individual's right to be free

from unreasonable searches and seizures by generally requiring the police to obtain a search warrant before conducting a search. When the police conduct a search without a warrant, the State has the burden of proving that an exception to the warrant requirement existed at the time of the search. *Polk v. State*, 822 N.E.2d 239, 245 (Ind.Ct.App.2005), *trans. denied.* "A valid consent to search is one exception to the warrant requirement." *Id.* Additionally, we would point out that although Article 1, Section 11's words parallel the Fourth Amendment's language, it has unique vitality. *Best*, 821 N.E.2d at 430. Rather than looking to Fourth Amendment jurisprudence to evaluate Article 1, Section 11 claims, we place the burden on the State to show that, under the totality of the circumstances, the police activity was reasonable. *Id.*

Starks argues that the State did not present sufficient evidence to prove that Civils consented to the search of the residence because Officer Patton did not testify that Civils specifically told him he could search the house. This argument asks us to reweigh the evidence, which we will not do.

▇▇ The evidence presented by the State was sufficient to permit the trial court to conclude that Civils consented to the search. Officer Patton, while under oath, testified that upon entering Civils' bedroom, he told Civils that he was there to check on her welfare. Civils told Officer Patton that the residence was very disruptive due to noise coming from the basement. She indicated that the noise caused by people going up and down the stairs to the basement and coming in and out of the residence was disturbing her. These statements indicate that Civils did not like what was going on in her house and wanted Officer Patton to do something about it. Officer Patton then asked Civils for permission to search the residence. Although Officer Patton was not asked by the prosecutor what Civils' answer was to this question, he later testified that after talking with Civils, he went to the basement of the home and told Officers McPherson and Bragg that they had permission to search the house. This testimony suggests that Civils consented to the search.

Officer Patton's testimony on cross-examination further supports the conclusion that Civils consented to the search. At one point, Starks' counsel asked Officer Patton whether Officer McPherson entered the basement "prior to you receiving consent from Mrs. Civils?" Tr. at 37. Starks' counsel seems to assume that Civils gave consent to Officer Patton to search the home. In answering the question, Officer Patton does not question this assumption, suggesting that he believed Civils did consent to the search. Later, the following exchange took place between Starks' attorney and Officer Patton:

Q So you did not get consent to search until after you had talked to Miss Civils?

A Correct.

Q And the officers were downstairs in the basement prior to you receiving consent from Miss Hazel Civils to search the home?

A Yes.

*Id.* at 44. Starks' counsel again assumes that Civils consented to the search, and Officer Patton does not challenge the assumption, which suggests that Civils consented. Therefore, based on this evidence, the trial court could properly conclude that the State presented sufficient evidence to prove that Civils consented to the officers' search of the residence.

## V. Seizure of the Gun and Cocaine

Starks next argues that the warrantless seizure of the handgun and cocaine discovered in the basement under a couch violated his rights under the Fourth Amendment and Article 1, Section 11. We have already determined that the State presented sufficient evidence to permit the trial court to conclude that Civils consented to the search of the residence. Thus, if the officers' search for and seizure of the handgun and cocaine occurred after Civils consented to the search, then the Fourth Amendment and Article 1, Section 11 were not violated.

 The testimony at the hearing indicates that while Officer Patton was speaking with Civils, Officers McPherson and Bragg entered the basement. Officer McPherson saw Starks sitting on a couch. Sticking out from underneath the couch, Officer McPherson saw the butt of a gun. Officer McPherson asked Starks to stand up and placed him in handcuffs. Officers McPherson and Bragg took no further action until Officer Patton came down to the basement and told them they had permission to search the house. A handgun and cocaine were then found underneath the couch. The officers' warrantless search for and seizure of the handgun and the cocaine did not violate the Fourth Amendment and was reasonable under Article 1, Section 11 because they were done after Civils consented to a search of the residence.

 However, Starks argues that the search was unconstitutional because he had a reasonable expectation of privacy in his living quarters in the basement and because he never consented to the search. We have already determined that Starks had standing to challenge the search, which means that he did have some expectation of privacy in the home. Nevertheless, we have previously stated that "con-

sent need not be given by the subject of the search, but may be given by a third party who has common authority over the premises." *Primus*, 813 N.E.2d at 374.

> Common authority rests on the mutual use of the property by persons generally having joint access or control for most purposes, so that it is reasonable to recognize that any of the cohabitants has the right to permit the inspection in his or her own right and that the others have assumed the risk that one of their number might permit the common area to be searched. The burden of establishing common authority rests upon the State.

*Id.* (citations omitted). "A third party may consent to the search of the premises or property of another if actual authority exists. Establishing actual authority requires a showing that there is a sufficient relationship to or mutual use of the property by persons generally having joint access or control for most purposes." *Id.* (citation omitted). In determining whether an individual had sufficient authority to consent to the entry of the police into a residence, we consider whether the facts available to the police officer at the moment would warrant a person of reasonable caution to believe that the consenting party had authority over the premises. *Id.* at 375. "If not, then warrantless entry without further inquiry is unlawful unless authority actually exists. But if so, the search is valid." *Id.* (citation omitted).

 The evidence introduced at the hearing indicates that Alexander told the police that Civils owned the residence and lived there. Officer Patton testified that he believed Civils owned the residence. Civils told Officer Patton that she knew of Starks but did not know he was in her house. She stated that she and Edward were the only people living in the resi-

dence. Officer McPherson testified that before entering the home he was told that Starks was inside but that he was not living in the residence. Based on the facts available to the officers, it was reasonable for them to believe that Civils had actual authority to consent to the search of the residence, including Starks' living quarters in the basement. So long as Civils consented to the search of the residence, Starks' consent was unnecessary. Therefore, the officers' seizure of the handgun and the cocaine did not violate the Fourth Amendment and was reasonable under Article 1, Section 11.

 Even if Civils did not have actual authority to consent to the search, she had apparent authority. If actual authority cannot be shown, a search may still be lawful if the consenting party had apparent authority. *Id.* at 374. "Under the apparent authority doctrine, a search is lawful if the facts available to the officer at the time would cause a person of reasonable caution to believe that the consenting party had authority over the premises." *Id.* at 374–75.

At the time of the search, the officers were aware that Civils lived at the home, and Officer Patton believed that she owned the residence. Before entering the residence, the officers had been told that Starks was inside but that he did not reside there. Civils confirmed this information when she told Officer Patton that she and Edward were the only people living in the home, and that, besides herself, Edward was the only other person who was supposed to be in the house. Based on this, it was reasonable for the officers to believe that Civils had apparent authority to consent to the search of the residence. Therefore, the officers' seizure of the cocaine and gun was proper.[1]

## VI. Seizure of the Money

Starks next contends that the officers' seizure of eight hundred and thirty-one dollars was unconstitutional. Before entering the house, the officers learned from Preston and Alexander that a heavy-set, black male wearing a white t-shirt whose name was Walter was selling drugs out of the residence and was armed with a hand-

---

1. The facts here are distinguishable from the situation presented in *Georgia v. Randolph*, —— U.S. ——, 126 S.Ct. 1515, 164 L.Ed.2d 208, 2006 WL 707380 (U.S.2006), a case recently decided by the United States Supreme Court. In that case, police went to the home of Scott and Janet Randolph to investigate a domestic dispute. Janet informed the police that Scott was using drugs, and that drugs would be found inside the couple's home. While standing outside the house with both Janet and Scott present, one of the officers asked Scott for permission to search the house, which Scott refused to give. The officer then turned to Janet and asked for her permission to search the house. Janet consented to the search, and inside the house the police found evidence of cocaine residue in a straw. Scott was charged with possession of cocaine, and moved to suppress the cocaine evidence. The trial court denied the motion, and Scott appealed. The Georgia Court of Appeals reversed, and the Georgia Supreme

Court affirmed its decision. The Supreme Court agreed with the Georgia Supreme Court and held that "a warrantless search of a shared dwelling for evidence over the express refusal of consent by a physically present resident cannot be justified as reasonable as to him on the basis of consent given to the police by another resident." *Id.* 126 S.Ct. at 1536.

Here, at the time Civils consented to a search of the residence, Starks was not physically present in Civils' bedroom nor did he express his refusal to consent to the search. Starks was physically present when Officers McPherson and Bragg entered the basement by removing the piece of plywood that was blocking the entrance, but there is no indication in the record that he expressed a refusal to consent to the officers' later search of that area. Therefore, *Randolph* is distinguishable and the officers' search of the basement and seizure of the gun and cocaine was permissible.

gun. The officers also observed a number of people going into and coming out of the residence. When Officer McPherson entered the basement of the house, he saw Starks sitting on a couch. Starks' appearance matched the description of the individual identified by Preston and Alexander who was allegedly selling drugs. Underneath the couch, Officer McPherson saw the butt of a gun sticking out. At that point, Officer McPherson had reasonable suspicion to detain Starks and placed him in handcuffs. After the officers were given consent to search the residence, they found a gun and cocaine underneath the couch Starks had been sitting on. Starks was then formally arrested. Officer Patton testified that a search of Starks' person uncovered eight hundred and thirty-one dollars.

We have previously stated that a search incident to a lawful arrest is an exception to the warrant requirement. *VanPelt v. State*, 760 N.E.2d 218, 222 (Ind. Ct.App.2001), *trans. denied.* Here, Starks was lawfully arrested and thereafter a search of his person resulted in the seizure of eight hundred and thirty-one dollars. Because the search that uncovered the eight hundred and thirty-one dollars was pursuant to a lawful arrest, the seizure of that money was not unconstitutional.

### Conclusion

The trial court properly concluded that Starks had standing to challenge the search of the residence. The officers' initial entry into the residence was proper because Edward had sufficient authority to admit them into the house. The State presented sufficient evidence to prove that Civils consented to the search of the residence. The seizure of the cocaine and the handgun did not violate the Fourth Amendment and was reasonable under Article 1, Section 11 because it was done after Civils consented to a search of the house. The seizure of the eight hundred and thirty-one dollars was proper because it was pursuant to a lawful arrest. The trial court's denial of Starks' motion to suppress evidence is therefore affirmed.

Affirmed.

VAIDIK, J., and MATHIAS, J., concur.