Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



ATTORNEY FOR APPELLANT:

**BARBARA J. SIMMONS**
Oldenburg, Indiana

ATTORNEYS FOR APPELLEE:

**GREGORY F. ZOELLER**
Attorney General of Indiana

**ELLEN H. MEILAENDER**
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

SCOTT ROBERTSON,               )
                               )
    Appellant-Defendant,       )
                               )
        vs.              )    No.   49A02-1112-CR-1081
                               )
STATE OF INDIANA,              )
                               )
    Appellee-Plaintiff.        )

APPEAL FROM THE MARION SUPERIOR COURT
The Honorable Kimberly J. Brown, Judge
Cause No.  49G16-1105-CM-32415

**July 30, 2012**

**MEMORANDUM DECISION - NOT FOR PUBLICATION**

**DARDEN, Senior Judge**

STATEMENT OF THE CASE

Scott Robertson appeals his conviction, following a bench trial, for class A misdemeanor resisting law enforcement.[1]

We affirm.

ISSUES

1. Whether the trial court erred by admitting evidence obtained after police entered the victim's and Robertson's house upon the victim's request.

2. Whether sufficient evidence supports Robertson's conviction.

FACTS

On May 8, 2011, Indianapolis Metropolitan Police Officer Lona Douglas took a domestic disturbance report from Angela Cobb, who reported that she had been assaulted and expressed fear about returning home. Cobb, who met Officer Douglas about two blocks from the house that she shared with Robertson, asked Officer Douglas to go back and look through the house to verify that Robertson was not there and that she could safely return to the house.

Upon Cobb's request to go into the house, Officer Douglas called for backup due to the fact that she was going to "be at a residence where the alleged suspect would be[.]" (Tr. 10). Officer Matthew Plummer met Officer Douglas at the house to assist her. When they arrived, some windows were open and the television was on in the living room. Officer Plummer, while standing at an open window, announced their police presence but got no response. The officers, who were both dressed in uniform, knocked

---

[1] Ind. Code § 35-44-3-3.

"very loud[ly]" several times on the front door, announcing their presence as police. (Tr. 19). After receiving no response, the officers entered the house through the unlocked front door "to make sure that no one was there." (Tr. 10).

The officers went into a bedroom, where they found Robertson, who was fully clothed, asleep on a bed, and covered by a blanket. The officers "loudly" announced themselves as police. (Tr. 21). Robertson "looked up" and "immediately put his hands underneath his body[.]" (Tr. 32). Officer Plummer ordered Robertson to show his hands, and Robertson responded, "Fuck you." (Tr. 21). Officer Plummer attempted to grab Robertson's arm, and Robertson's "whole body stiffened" and he moved his arms underneath his body. (Tr. 21). Officer Douglas got on top of Robertson's back and attempted to pull out one of his hands from under him, but she was unable to do so. Officer Plummer continued to shout for Robertson to show his hands, but he refused. Officer Plummer had to use some "distraction techniques," including "knee strikes to the side of the body" and "open hand palm strikes to the side of the face[,]" on Robertson before the officers were able to get one of Robertson's arms from underneath his body. (Tr. 21). After struggling with Robertson for twenty to thirty seconds, the officers were eventually able to secure his hands.

The State charged Robertson with domestic battery, battery, and resisting law enforcement, all class A misdemeanors. Robertson filed a motion to suppress any evidence, including observations made by arresting officers and statements made by him, obtained after police entered the house. During the hearing on the motion to suppress, Robertson argued that the evidence should be suppressed because: (1) Cobb was entitled

3

to a *Pirtle* warning when she asked the officers to search the house; and (2) the officers engaged in a warrantless entry into the house. Following the hearing, the trial court denied Robertson's motion. The State moved to dismiss the domestic battery and battery charges against Robertson due to Cobb's failure to appear for the trial, and the trial court proceeded to a bench trial on the resisting law enforcement charge.

Robertson objected to the admission of the officers' testimony regarding his actions while inside the house. Specifically, Robertson's objections were based on the sole argument that the officers' entry into the house was unlawful because it was a warrantless entry. The trial court overruled his objections. During the bench trial, Robertson testified that when he put his hands under his body, he did not realize that it was the police in the house and that he did not hear the officers yelling and identifying themselves as police. The trial court found Robertson guilty of resisting law enforcement and sentenced him to 365 days in jail, with twelve days executed and 353 days suspended to probation.

DECISION

1. Admission of Evidence

Robertson argues that the trial court abused its discretion by admitting evidence obtained after police entered the house. Specifically, he contends that the trial court should not have admitted any testimony from the police officers regarding his resisting behavior because the police officers' entry into the house constituted an unlawful entry in

4

violation of the Fourth Amendment of the United States Constitution and Article 1, Section 11 of the Indiana Constitution.[2]

The admission and exclusion of evidence falls within the sound discretion of the trial court, and we review the admission of evidence only for abuse of discretion. *Wilson v. State*, 765 N.E.2d 1265, 1272 (Ind. 2002). An abuse of discretion occurs "where the decision is clearly against the logic and effect of the facts and circumstances." *Smith v. State*, 754 N.E.2d 502, 504 (Ind. 2001).

A. *Fourth Amendment*

The Fourth Amendment to the United States Constitution protects the "right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures[.]" U.S. Const. Amend. IV. "[T]he physical entry of the home is the chief evil against which the wording of the Fourth Amendment is directed." *State v. Straub*, 749 N.E.2d 593, 597 (Ind. Ct. App. 2001) (citation and internal quotations omitted). However, "[t]he Fourth Amendment recognizes a valid warrantless entry and search of premises when police obtain the voluntary consent of an occupant who shares, or is reasonably believed to share, authority over the area in common with a co-occupant who later objects to the use of evidence so obtained." *Gado v. State*, 882 N.E.2d 827, 831 (Ind. Ct. App. 2008) (citation and internal quotations omitted), *trans. denied*. *See also Starks v. State*, 846 N.E.2d 673, 679 (Ind. Ct. App. 2006) (explaining that a third

---

[2] Robertson also attempts to argue that the evidence should not have been admitted because the officers conducted a warrantless search. Robertson, however, has waived this argument on appeal because he did not make a warrantless search objection at trial. *See White v. State*, 772 N.E.2d 408, 411 (Ind. 2002) ("A party may not object on one ground at trial and raise a different ground on appeal.").

party may consent to police officers entering onto the property of another and searching the premises if actual authority exists), *trans. denied.*

Authority to consent to a search can be either actual or apparent. *Gado*, 882 N.E.2d at 831. "Establishing actual authority requires a showing that there is a sufficient relationship to or mutual use of the property by persons generally having joint access or control for most purposes." *Id.* (citation and internal quotations omitted). "A consenting party with actual authority over property may permit the search in his or her own right; also, a defendant 'assume[s] the risk' that a co-occupant might permit a search." *Id.* (quoting *Lee v. State,* 849 N.E.2d 602, 606 (Ind. 2006), *cert. denied*). In regard to apparent authority, "a search is lawful if the facts available to the officer at the time would warrant a man of reasonable caution in the belief that the consenting party had authority over the premises." *Krise v. State*, 746 N.E.2d 957, 967 (Ind. 2001) (citation and internal quotations omitted).

Here, while the officers' entry into the house may have been warrantless, it was not unlawful. The officers entered the house with Cobb's consent; more specifically, they entered the house upon her request. Officer Douglas initially took a domestic disturbance report from Cobb at a location near the house. Cobb told Officer Douglas that she had been assaulted at her home and then asked the officer to go back and look through the house to verify that Robertson was not there and that she could safely return to the house. Cobb gave the address of the house as her home and apparently told the officer that Robertson lived there as well. Upon Cobb's request to Officer Douglas to go into and search the house, the officer called for backup due to the fact that she was going

6

to "be at a residence where the alleged suspect would be[.]" (Tr. 10). Officer Plummer met Officer Douglas at the house, where they eventually entered the house and encountered Robertson. Because Cobb, who lived at the house with Robertson, had actual authority to consent to the officers' entry into the house, the entry was not unlawful. *See, e.g.*, *Starks*, 846 N.E.2d at 679 (holding that officers' initial warrantless entry into the home did not violate the Fourth Amendment or Article 1, Section 11 where a resident of the home consented to the officers' entry); *see also Krise*, 746 N.E.2d at 967 (explaining that person who shared a house with the defendant had actual authority to consent to a search of the home). Accordingly, the officers' entry into the house did not violate the Fourth Amendment.[3]

B. *Indiana Constitution*

Robertson also contends that the warrantless entry of the house violated Article 1, Section 11 of the Indiana Constitution. The purpose of Article 1, Section 11 is "to protect from unreasonable police activity those areas of life that Hoosiers regard as private." *Brown v. State*, 653 N.E.2d 77, 79 (Ind. 1995). In deciding whether a warrantless search

---

[3] Robertson does not dispute that Cobb lived at the house or that she consented to the officers' entry into the house. Instead, he suggests that the police officers should have somehow done more to establish that Cobb had authority to consent to the entry, such as "inquir[e] as to whether Ms. Cobb's name was on the lease" or "if her driver's license listed the address" of the house. Robertson's Br. at 10. Robertson, who fails to cite to any authority in support of his argument, has waived such argument. *See* Ind. Appellate Rule 46(A)(8)(a) ("Each contention must be supported by citations to the authorities . . . ."); *see also Lyles v. State*, 834 N.E.2d 1035, 1050 (Ind. Ct. App. 2005) ("A party waives an issue where the party fails to develop a cogent argument or provide adequate citation to authority and portions of the record."), *trans. denied*. Waiver notwithstanding, we will not impose a requirement upon police officers that they first obtain some sort of written documentation or verification from a person who consents to the officers' entry into his or her house. Furthermore, Robertson lived in the house with Cobb, and he "assumed the risk" that Cobb would permit the police to enter the house after an alleged domestic disturbance incident. *See Krise*, 746 N.E.2d at 967.

and seizure violates Article 1, Section 11, we must determine whether, under the totality of the circumstances, the search was reasonable. *Id.* The determination of the reasonableness of a search or seizure often turns on a balance of: (1) the degree of concern, suspicion, or knowledge that a violation has occurred; (2) the degree of intrusion the method of the search or seizure imposes on the citizen's ordinary activities; and (3) the extent of law enforcement needs. *Litchfield v. State*, 824 N.E.2d 356, 361 (Ind. 2005).

Here, the totality of the circumstances establishes that the entry into the house was reasonable. First, there was a high degree of concern that a violation had occurred. Specifically, Cobb contacted police to report a domestic disturbance and then met with Officer Douglas to file the report at a location a couple of blocks from the house. Cobb, who reported that she wanted to return home, requested that the police go to and search the house that she shared with Robertson to verify that Robertson, who she alleged had assaulted her, was not in the house. Officer Douglas then requested backup because she was going to be entering the house where the alleged suspect might be.

Next, the degree of intrusion was not substantial given the circumstances of this case. While the degree of intrusion is viewed from the point of view of the occupants of the premises, *see Duran v. State*, 930 N.E.2d 10, 19 (Ind. 2010), and Robertson had an expectation of privacy in the house, the degree of intrusion was minimal because the officers entered the house with Cobb's consent and at her request. *See Gado*, 882 N.E.2d at 831 (explaining that a defendant assumes the risk that a co-occupant might permit a

8

search of the premises). Additionally, the police announced their presence before entering the house.

Finally, the extent of law enforcement needs was considerable. "[T]he severity of the law enforcement need embraces proper concern for the health and safety of others[.]" *Trimble v. State*, 842 N.E.2d 798, 804 (Ind. 2006), *adhered to on reh'g*, 848 N.E.2d 278 (Ind. 2006). The officers entered the house to make sure that a domestic abuse victim was able to safely return to the house that she shared with the alleged perpetrator. The risk of allowing such a victim to return to a potentially volatile environment that had precipitated the initial domestic disturbance run elevated the extent of the law enforcement needs.

In sum, we find that the officers' entry into the house did not violate the Fourth Amendment of the United States Constitution or Article I, Section 11 of the Indiana State Constitution. Thus, the trial court properly admitted the officers' testimony into evidence during the bench trial.

2. Sufficiency

Robertson argues that the evidence was insufficient to support his conviction for resisting law enforcement.

> When reviewing the sufficiency of the evidence to support a conviction, appellate courts must consider only the probative evidence and reasonable inferences <u>supporting</u> the verdict. It is the fact-finder's role, not that of appellate courts, to assess witness credibility and weigh the evidence to determine whether it is sufficient to support a conviction. To preserve this structure, when appellate courts are confronted with conflicting evidence, they must consider it most favorably to the trial court's ruling. Appellate courts affirm the conviction unless no reasonable fact-finder could find the elements of the crime proven beyond a reasonable doubt. It is therefore not

9

necessary that the evidence overcome every reasonable hypothesis of innocence. The evidence is sufficient if an inference may reasonably be drawn from it to support the verdict.

*Drane v. State*, 867 N.E.2d 144, 146-47 (Ind. 2007) (quotations and citations omitted).

To convict Robertson of resisting law enforcement as charged, the State was required to prove beyond a reasonable doubt that Robertson knowingly or intentionally forcibly resisted, obstructed, or interfered with Officer Douglas or Officer Plummer while he or she was lawfully engaged in the execution of his or her duties. *See* I.C. § 35-44-3-3.

Robertson first contends that the evidence was insufficient to show that he forcibly resisted the officers, arguing that he "used no strength, power or violence toward the officers nor made a threatening gesture or movement in their direction." Robertson's Br. at 16. He asserts that his actions did not constitute forcible resistance because he "did nothing more than place his hands under his body while he was lying in his bed as the officers were attempting to wake him." Robertson's Br. at 15.

The State, on the other hand, asserts that there was sufficient evidence to show that Robertson forcibly resisted the officers because the "evidence in this case went beyond mere passive resistance." State's Br. at 12. The State argues that the evidence that officers were unable to pull Robertson's arms out from under his body and evidence that Robertson "stiffened up" when officers tried to grab his arms shows that Robertson exerted the requisite level of force to constitute forcible resistance. *Id.* at 13.

Under the resisting law enforcement statute, a defendant "forcibly resists" law enforcement when "'strong, powerful, violent means are used to evade a law enforcement

official's rightful exercise of his or her duties.'" *Graham v. State*, 903 N.E.2d 963, 965 (Ind. 2009) (quoting *Spangler v. State*, 607 N.E.2d 720, 723 (Ind. 1993)). The force necessary to sustain a conviction for resisting law enforcement "need not rise to the level of mayhem." *Id.* The requisite level of force may be found where a defendant "stiffen[s] up" and police are required to exert force or use physical means to counteract the defendant's acts of resistance. *See Johnson v. State*, 833 N.E.2d 516, 517 (Ind. Ct. App. 2005) (holding that there was sufficient evidence of forcible resistance where the defendant used physical means to resist the officers when he turned and pushed away with his shoulders and stiffened up, requiring officers to exert force to place him inside a transport vehicle); *see also Guthrie v. State*, 720 N.E.2d 7, 9 (Ind. Ct. App. 1999) (explaining that defendant had forcibly resisted law enforcement where the defendant refused to walk, leaned his body back, and stiffened his legs and where the police had to lift and carry him), *trans. denied*. Indeed, "even 'stiffening' of one's arms when an officer grabs hold to position them for cuffing would suffice" to show that a defendant forcibly resisted law enforcement. *See Graham*, 903 N.E.2d at 966.

Here, police officers, who were dispatched to investigate a domestic disturbance involving Robertson and Cobb, encountered Robertson in the bedroom of the house he shared with Cobb. Robertson, who was dressed and lying under a blanket on the bed, "immediately put his hands underneath his body" and refused to comply with the officers' commands to show his hands. (Tr. 32). When Officer Plummer attempted to grab Robertson's arm, Robertson's "whole body stiffened" and he moved his arms underneath his body. (Tr. 21). Officer Douglas got on top of Robertson's back and

11

attempted to pull out one of his hands from under him, but she was unable to do so. The officers struggled with Robertson for twenty to thirty seconds and were only able to get Robertson's hands out from under him and secured after Officer Plummer's "distraction techniques finally took effect[.]" (Tr. 21). Additionally, when Robertson testified during the bench trial, he admitted that he "st[u]ck [his] hands up under there," (tr. 39), although he claimed that he did not realize that police officers were the ones trying to get his arms. The trial court rejected Robertson's claim that he did not know that it was the police with whom he was struggling, specifically stating that it did "not find the defendant's testimony to be credible[.]" (Tr. 45).

The evidence presented is sufficient to show that Robertson acted with the requisite force in resisting the officers in the execution of their duties. *See, e.g.*, *Johnson*, 833 N.E.2d at 517-18; *Guthrie*, 720 N.E.2d at 9; *cf. Graham*, 903 N.E.2d at 966 (explaining that "even 'stiffening' of one's arms when an officer grabs hold to position them for cuffing would suffice" to show that a defendant forcibly resisted law enforcement and reversing defendant's conviction because there was no evidence or inference of stiffening). Because there was probative evidence from which the trial court, as trier of fact, could have found Robertson guilty of resisting law enforcement, we affirm his conviction.[4]

---

[4] Robertson also suggests that the evidence was insufficient to show that the officers were lawfully engaged in the execution of their duties. Robertson has waived this issue by failing to make a cogent argument. *See* Ind. Appellate Rule 46(A)(8)(a). Waiver notwithstanding, the evidence presented at trial was sufficient to show that the officers were lawfully engaged in the execution of their duties.

Affirmed.

NAJAM, J., and RILEY, J., concur.