## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



**FILED**

Feb 25 2016, 6:11 am

*Kevin S. Smith*

**CLERK**
of the supreme court,
court of appeals and
tax court

ATTORNEY FOR APPELLANT

Alan K. Wilson
Muncie, Indiana

ATTORNEYS FOR APPELLEE

Gregory F. Zoeller
Attorney General of Indiana

Brian Reitz
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| Christopher Dent, *Appellant-Defendant,* <br><br> v. <br><br> State of Indiana, *Appellee-Plaintiff.* | February 25, 2016 <br><br> Court of Appeals Case No. 18A05-1509-CR-1339 <br><br> Appeal from the Delaware Circuit Court <br><br> The Honorable Linda Ralu Wolf, Judge <br><br> Trial Court Cause No. 18C03-1502-F4-1 |

**Riley, Judge.**

## STATEMENT OF THE CASE

Appellant-Defendant, Christopher Dent (Dent), appeals his conviction for dealing in a schedule I controlled substance, a Level 4 felony, Ind. Code §§ 35-48-4-2(a)(2); -2(d)(1) (2015); dealing in a schedule I controlled substance, a Level 6 felony, I.C. § 35-48-4-2(a)(1); and maintaining a common nuisance, a Level 6 felony, I.C. § 35-48-4-13(b)(2).

We affirm.

## ISSUE

Dent raises one issue on appeal, which we restate as follows: Whether the trial court abused its discretion when it admitted the evidence found pursuant to Dent's consent to search.

## FACTS AND PROCEDURAL HISTORY

On January 8, 2015, Corporal Jeff Stanley (Officer Stanley) of the Delaware County Sheriff's Department made a controlled buy of heroin from Dent with the help of an informant at Dent's residence on South Hackley Street in Muncie, Indiana. At the time of the purchase, Dent was on home detention pending pre-trial on an unrelated offense and was required to wear an electronic monitoring device. The informant was given $60, which had been photocopied, and was outfitted with a video recording device. The video recording showed that the informant met with Dent, and Dent handed him a small piece of folded paper containing 0.10 grams of heroin.

On January 20, 2015, Officer Stanley and his colleague, Corporal Lenny Popp (Officer Popp), continued their investigation and went to Dent's new residence on North Macedonia Avenue in Muncie to potentially arrest Dent. Officer Popp, wearing a full police uniform, knocked on the front door. Ricky Shannon (Shannon) answered the door. The officer explained they were looking for Dent, and Shannon "without saying come in, just kind of opened up the door … [and] acknowledged that [the officer] could come into the residence to talk to him." (Transcript p. 40). Officer Popp entered the residence and Officer Stanley followed. Dent's sister and her young child were also present in the residence. Neither Shannon nor Dent's sister—who have a child together— ever asked the officers to leave. The officers asked Shannon where Dent's home monitoring device was located. Shannon stated that it was in the kitchen and walked the officers there. While following Shannon to the kitchen, Officer Stanley noticed digital scales with a white powder on them in a bedroom through the open door. Officer Stanley did not go in the bedroom, but asked Officer Popp to look in as well. Officer Popp saw the digital scales and the residue. Shannon stated that it was Dent's bedroom.

Officer Stanley learned that Dent might be at the community corrections office and left to verify. Officer Popp remained in the residence to prevent destruction of the evidence. He talked to Shannon and Dent's sister without impeding their freedom of movement. Officer Popp learned that the residence was Dent's and they rarely stayed there. During this time, neither Shannon nor Dent's sister asked Officer Popp to leave.

[7] Meanwhile, Officer Stanley went to the community corrections office, saw Dent sitting in the waiting room, and arrested him. Officer Stanley informed Dent of the reason for the arrest and stated that he wanted Dent's consent to search Dent's residence. Officer Stanley then drove Dent back to the residence. Once they arrived, Officer Stanley removed Dent's handcuffs. They were outside of the residence when Dent stated that he wanted to speak with Shannon. Officer Stanley allowed the two to talk and then read a consent to search form to Dent. Dent became very belligerent, refused to sign the form, and told Officer Stanley to get a search warrant. Officer Popp, still inside the residence, heard a "ruckus" outside because Dent was "getting pretty fired up." (Tr. pp. 44, 354). Officer Stanley explained to Dent that he was going to obtain a search warrant, that Dent would be arrested, and attempted to handcuff Dent, but Dent pulled away. At that point, Officer Stanley placed Dent against the outside wall of the residence and handcuffed him "us[ing] enough force to get the job done." (Tr. p. 29). Officer Popp walked outside and placed Dent in his vehicle.

[8] Inside the vehicle, Officer Popp explained to Dent that they were narcotics officers investigating him and reiterated that Officer Stanley was going to obtain a search warrant. Officer Popp, assuming that Dent had requested a lawyer, said that the officers could not talk to Dent because Dent had asked for a lawyer. Dent responded, "I never said that. I never lawyered up. I will talk to you guys and will give [my] consent." (Tr. pp. 47, 357). Dent continued talking and asked if he would be allowed to go free or given consideration if he

gave the officers permission to search. Officer Popp explained that because Dent had been selling drugs on in-home monitoring he would be going to jail and further stated he could not make any promises or coerce Dent into signing anything. Dent asked if he could talk to Officer Stanley.

Officer Popp called Officer Stanley and informed him that Dent had changed his mind and would consent to the search. The officers presented a consent to search form to Dent, which stated, in pertinent part, as follows:

> [H]aving been informed of my constitutional rights (Miranda Warning), my right to not have a search made of my premises and/or motor vehicle(s) hereinafter mentioned without a search warrant, my right to refuse to consent to a search, and my right to confer and speak with an attorney before I grant permission for a search, and my right to confer and speak to an attorney before I grant permission for a search and to have an attorney appointed by the court for such purposes if I cannot afford one, here by authorize, consent and allow. . . .
>
> * * *
>
> Indiana Pirtle Warning
>
> You have the right to require that a search warrant be obtained before any search of your residence, vehicle or other premises. You have the right to refuse to consent to any such search. You have the right to consult with an attorney prior to giving consent to any such search. If you cannot afford an attorney, you have the right to have an attorney provided to you at no cost.

(State's Ex. 9).

Dent signed the form in three different places. The officers searched the house. In Dent's bedroom, they discovered a loaded shotgun, a handgun underneath

the mattress, syringes, and an orange cologne box with 4.13 grams of heroin inside.

[11] On January 27, 2015, the State filed an Information charging Dent with: Count I, dealing in a schedule I controlled substance, a Level 4 felony, I.C. §§ 35-48-4-2(a)(2); -2(d)(1); Count II, dealing in a schedule I controlled substance, a Level 6 felony, I.C. § 35-48-4-2(a)(1); and Count III, maintaining a common nuisance, a Level 6 felony, I.C. § 35-48-4-13(b)(2). On June 17, 2015, Dent filed a motion to suppress the evidence found inside Dent's residence, which the trial court denied following an evidentiary hearing on June 26, 2015. At the conclusion of a two-day jury trial, the jury found Dent guilty as charged on June 30, 2015. On August 10, 2015, the trial court sentenced Dent to an aggregate term of eight years executed at the Department of Correction.

[12] Dent now appeals. Additional facts will be provided as necessary.

## DISCUSSION AND DECISION

### I. *Standard of Review*

[13] We initially note that Dent frames our standard of review with regard to the trial court's denial of his motion to suppress evidence. However, because Dent appeals after a completed trial, the question of whether the trial court erred in denying his motion to suppress is no longer viable. *Reinhart v. State*, 930 N.E.2d 42, 45 (Ind. Ct. App. 2010) (internal citations omitted). The issue is more appropriately framed as whether the trial court abused its discretion when it admitted the evidence at trial. *Id*. When we review a trial court's ruling on the

admissibility of evidence resulting from an allegedly illegal search, we do not reweigh the evidence, and we consider conflicting evidence most favorable to the trial court's ruling. *Id*. We also defer to the trial court's factual determinations unless clearly erroneous. *Id.* However, we consider afresh any legal question of the constitutionality of a search or seizure. *Id.*

## II. *Officers Entry into the Residence*

[14] Dent claims that the officers' initial entry into his residence was illegal. He specifically asserts that Shannon lacked either actual or common authority over the premises to consent to the officers' entry.

[15] We have previously stated that a third party may consent to police officers entering onto the property of another and searching the premises if actual authority exists. *Starks v. State*, 846 N.E.2d 673, 679 (Ind. Ct. App. 2006). If actual authority cannot be shown, then facts demonstrating that the consenting party had apparent authority to consent could prove a lawful search. *Primus v. State*, 813 N.E.2d 370, 374 (Ind. Ct. App. 2004). Under the apparent authority doctrine, a search is lawful if the facts available to the officer at the time would cause a person of reasonable caution to believe that the consenting party had authority over the premises. *Id*. at 374-75. The State bears the burden of proving that the third party possessed the authority to consent. *Id*. at 375.

[16] In *Starks*, an officer knocked on the door and a third party, someone other than a homeowner, answered it. *Starks*, 846 N.E.2d at 679. The officer explained that he was there to check on the welfare of the homeowner, and the third party

stated that the homeowner could not come to the door because she had an amputated leg. *Id.* The third party let the officers in and then escorted one of the officers to the homeowner. *Id.* The third party clearly demonstrated his sufficient knowledge and relationship to the property and the homeowner. Because the third party was the homeowner's grandson and a resident of the home, we held that he had the authority to admit the officers into the house. *Id.*

[17] Here, similar to *Starks*, someone other than the homeowner opened the door, and Officer Popp explained that he was looking for Dent. Shannon stated Dent was not there. He then "without saying come in … opened up the door and just stepped back, so [the officers] walked in to talk to him." (Tr. p. 40). *See McIlquham v. State*, 10 N.E.3d 506, 512 (Ind. 2014) (citing *United States v. Villegas*, 388 F.3d 317, 325 (7th Cir. 2004) (consent to enter held valid when the defendant opened the door and allowed the police officers to enter after the officers had identified themselves, asked permission to speak with the defendant, and did not threaten the defendant or brandish their weapons) and *United States v. Walls*, 225 F.3d 858, 863 (7th Cir. 2000) (consent to enter held valid when the defendant opened the door and stepped back to allow the agents' entrance after they had identified themselves and what they were investigating)). In essence, Shannon non-verbally consented to the officers' entry.

[18] When asked about Dent's home monitoring device, Shannon stated that it was in the box in the kitchen and then escorted the officers there. Shannon

demonstrated his sufficient relationship to or mutual use of the property because at the time of the entry he had knowledge of Dent's whereabouts, had knowledge of the location of Dent's home monitoring device, and was familiar with the layout of Dent's residence. Later, the officers learned that Shannon knew Dent for several years, had blood relations to Dent, had his weapons in Dent's bedroom, and had an explicit permission to stay there that day and the previous night. As such, it was reasonable for the officers to believe Shannon had apparent authority to admit them into the house to check the monitoring device and talk to the individuals inside. *See Starks*, 846 N.E.2d at 679.

### III. *Consent to Search*

[19] Dent further asserts that his consent to search his residence was not voluntary. Generally, a search warrant is a prerequisite to a constitutionally proper search and seizure. *Primus*, 813 N.E.2d at 374 (internal citations omitted). When a search is conducted without a warrant, the State has the burden of proving that an exception to the warrant requirement existed at the time of the search. *Id.* Warrantless searches and seizures inside the home are presumptively unreasonable. *Id.* However, one well-recognized exception to the warrant requirement is a voluntary and knowing consent to search. *Id.* The theory underlying the consent exception is that, when an individual gives the State permission to search either his person or property, the governmental intrusion is presumably reasonable. *Id.*

[20]   Whether consent to a search was given voluntarily is a question of fact to be determined from the totality of all the circumstances. *State v. Cunningham*, 26 N.E.3d 21, 25 (Ind. 2015) (internal quotation marks and citations omitted). We consider conflicting evidence most favorably to the trial court's ruling, as well as undisputed evidence favorable to the defendant. *Id.* It is the State's burden to prove that consent to a search was in fact voluntarily given, and not the result of duress or coercion, express or implied. *Id.*

[21]   Dent specifically claims that the language of the *Pirtle* warning in the form signed by him was not sufficient because it failed to state that he was "entitled to the *presence and advice* of counsel prior to" consenting to the search. (Appellant's Br. p. 13) (emphasis original).

[22]   In *Pirtle v. State*, 323 N.E.2d 634 (Ind. 1975), our supreme court held that "a person who is asked to give consent to a search while in police custody is entitled to the presence and advice of counsel prior to making the decision whether to give such consent." *Id*. at 640. Our supreme court, however, further refined the doctrine in *Jones v. State*, 655 N.E.2d 49 (Ind. 1995), stating that a "person in custody must be informed of the right to consult with counsel about the possibility of consenting to a search before a valid consent can be given." *Id*. at 54 (citations omitted). Here, following a *Miranda* warning, the officers informed Dent of his *Pirtle* rights. The officers advised Dent that he had the right to require a warrant before consenting to the search; that he had the right to refuse to consent; that he had the right to consult with an attorney prior to consenting; and that he had the right to have an attorney appointed at no cost if

he could not afford one. Dent later testified at the suppression hearing that he did, in fact, voluntarily signed the form. Now, Dent invites us to give the original language of the *Pirtle* warning special powers. We are reluctant to do that because it would require us to elevate form over substance. *See*, *e.g.*, *French v. State*, 754 N.E.2d 9, 15 (Ind. Ct. App. 2001) (where the purpose of a rule is satisfied, this court will not elevate form over substance). We find that, in line with the *Jones* decision, the language of the *Pirtle* warning contained in the police form voluntarily signed by Dent was sufficient to inform Dent that he had the right to consult with counsel before consenting to the search of his residence.

[23] Dent finally contends that he was coerced into signing the consent form because the officers told him that they would get a search warrant if he refused to consent to the search. In *Daniel v. State,* 582 N.E.2d 364 (Ind. 1991), *cert. denied,* our supreme court ruled that it was not improper for an officer to inform a defendant that a warrant will be sought if consent is not given. *Id.* at 369. In *State v. Barker*, 734 N.E.2d 671 (Ind. Ct. App. 2000), we also recognized that there is a difference between an officer telling a defendant that a warrant will be "obtained as opposed to merely sought." *Id.* at 674.

[24] In *Barker*, the officers were investigating an anonymous tip that sixty-one year-old Barker was growing marijuana in her home. *Id.* at 672. The officers went to Barker's residence, asked Barker if they could enter the house, and told her they could get a search warrant if she refused them entrance. *Id.* Barker cooperated and told the officers she had nothing to hide and that they could

come in and look around. *Id.* The officers went inside and found ten marijuana plants, potting soil, and lights in the basement. *Id.* After the search and seizure, the officers presented Barker a "Permit to Search" form that Barker signed. *Id.* Because of Barker's age and relative inexperience with law enforcement, we held that she was coerced into signing the form under the circumstances. *Id.* at 674.

[25] Here, unlike the defendant in *Barker*, Dent was not inexperienced in his dealings with law enforcement. He knew his rights and clearly revoked his consent to search at least once. The record does not show that the officers used the threat of a search warrant to make Dent sign the consent form at any point. After revoking his initial consent, Dent was placed in Officer Popp's vehicle and then raised the issue again himself. Dent was hoping to get some leniency for his cooperation and his consent to search. Officer Popp was very careful in his conversation with Dent; he made it clear that the officers would not make any promises and would not coerce him into signing anything. Also, unlike *Barker*, where the reason for the search was an informant tip, here, the reason for the search was more substantial—the video recording of the controlled buy of heroin from Dent on January 8, 2015. The officers' statement and ability to get a search warrant were not illusory here. As such, we find that Dent's consent to the search of his residence was voluntary.

## CONCLUSION

Based on the foregoing, we hold that the trial court did not abuse its discretion in admitting the evidence found in Dent's residence because Dent voluntarily consented to the search.

Affirmed.

Najam, J. and May, J. concur