**FOR PUBLICATION**

ATTORNEY FOR APPELLANT:

**HUGH N. TAYLOR**
Auburn, Indiana

ATTORNEYS FOR APPELLEE:

**GREGORY F. ZOELLER**
Attorney General of Indiana

**GEORGE P. SHERMAN**
Deputy Attorney General
Indianapolis, Indiana

FILED

Apr 18 2013, 9:24 am

CLERK
of the supreme court,
court of appeals and
tax court

# IN THE
# COURT OF APPEALS OF INDIANA

| | | |
|---|---|---|
| CASEY WALKER, | ) | |
| | ) | |
| Appellant-Defendant, | ) | |
| | ) | |
| vs. | ) | No. 76A04-1204-CR-207 |
| | ) | |
| STATE OF INDIANA | ) | |
| | ) | |
| Appellee-Plaintiff. | ) | |

APPEAL FROM THE STEUBEN SUPERIOR COURT
The Honorable William C. Fee, Judge
Cause No. 76D01-1111-FA-1105

**April 18, 2013**

**OPINION – FOR PUBLICATION**

**BAKER, Judge**

In this case, appellant-defendant Casey Walker was convicted of class A felony Manufacturing Methamphetamine[1] and sentenced to thirty years of incarceration. Evidence presented at Walker's trial included evidence obtained from a warrantless search of a residence that police officers conducted after obtaining the consent of Walker's wife, an occupant of the residence, and Walker's mother, the owner and an occupant of the residence.

On appeal, Walker argues that the State failed to establish an exception to the warrant requirement because his mother is incapable of giving consent in that she suffers from Alzheimer's disease. Walker requests that the evidence seized from the search be suppressed, and consequently, his conviction reversed.

We conclude that Walker has failed to establish that his mother was incompetent to give consent to search the residence. Moreover, there was undisputed testimony at trial that Walker's wife gave verbal consent to search the residence, and Walker points to no evidence that he explicitly told the police that they could not enter his residence. Accordingly, we find that the police had consent to search the residence, and the trial court did not err by admitting the evidence. Thus, we affirm the judgment of the trial court.

---

[1] Ind. Code § 35-48-4-1.1.

2

In 2011, Walker and his wife, Jennifer, lived in Steuben County with Walker's eighty-seven-year-old mother, Mary Walker. Mary owned the residence and, according to Walker's testimony, had been diagnosed with Alzheimer's disease. Walker acted as his mother's power of attorney, and his sister, Susan Baumgartner, served as alternate power of attorney.[3]

On November 10, 2011, Jennifer saw Walker putting gray strips into a plastic bottle and noticed a "chemical odor." Tr. p. 121. Because Jennifer had "a hunch" that Walker was making methamphetamine, she drove herself and Mary to her sister's house, which was "[j]ust up the road." Id. at 121-23. Once they arrived, Jennifer called the police and reported that she thought Walker was manufacturing methamphetamine.

Detective Sergeant Michael Meeks of the Steuben County Sheriff's Department received a call shortly after noon on November 10th about a complaint of possible "meth making activity at [the Walker] residence." Tr. p. 131. Detective Meeks and two patrol deputies met Jennifer at a parking lot at Fairview Missionary Church, which is adjacent

---

[2] We heard oral argument on April 1, 2013, at the Indiana University Maurer School of Law. We would like to thank counsel for their presentations and the students who attended the argument for their presence and respectful manner. Additionally, we want to express our appreciation to the administration, faculty, technology support, and staff of the Maurer School of Law for their warm hospitality and assistance.

[3] The documents granting power of attorney to Walker and alternate power of attorney to Baumgartner were not included in the record on appeal. Instead, we have only the colloquy between the trial court and the defense counsel that it would be "[e]asy enough for me to check the court records [to] see if there is a guardianship" or a power of attorney. Tr. p. 104.

to the Walker residence. The information that Detective Meeks received from Jennifer "indicated that the lab was active and so our, my main concern was the hazardous materials and the possible fire hazard that's commonly associated with the one pot methamphetamine."[4] Id. at 132.

Detective Meeks obtained verbal consent from Jennifer and Mary to enter the house and try to make contact with Walker. Additionally, Detective Meeks witnessed Mary and Baumgartner sign a consent form granting the police officers permission to enter the house.

After obtaining these consents, Detective Meeks met with Sergeant Nott and Deputy Reardon, and they entered the residence through an open overhead garage door. After entering the garage, they "knocked on the entry door . . . along the east wall of the garage. The main door was open but the storm door was closed." Tr. p. 138. Detective Meeks stated that they knocked several times and that Sergeant Nott called out Walker's name. After receiving no response, the three officers stepped inside based on Jennifer's and Mary's consent.

At that point, Walker emerged from a bathroom that was adjacent to the door where the officers had just entered. Walker was immediately "placed into protective custody by being handcuffed behind the back," while the officers conducted a protective sweep of the residence. Tr. p. 139-40. Detective Meeks briefly explained to Walker why

---

[4] Detective Meeks explained to the jury that the "one pot" method of making methamphetamine involves filling a sports or two-liter bottle with ammonium sulfate or ammonium nitrate, adding any organic solvent and either pseudoephedrine or ephedrine, and then adding lithium strips extracted from batteries, which begins the chemical reaction. Tr. p. 135-36.

the officers were there and what they were doing. Walker denied making methamphetamine.

During the protective sweep, Detective Meeks noticed a chemical odor in the southwest bedroom that he associated with the manufacture of methamphetamine. Detective Meeks also noticed an open window with an exhaust fan in it and knew from his experience and training that this was a common practice during the manufacture of methamphetamine to rid a room of the chemical odor. Additionally, Detective Meeks observed coffee filters inside a gallon-size plastic storage bag, which are commonly used to make methamphetamine using the "one pot" method. Appellant's App. p. 132.

Based on this information and Detective Meeks's training and experience, he believed that he had probable cause that methamphetamine was being manufactured in the residence. Detective Meeks sought and obtained a search warrant, and during the execution of the search warrant, the police found:

- Two plastic bottles containing a white granular substance, one of which also contained a clear liquid
- Two bottles containing drain opener
- Blue plastic funnel with white residue
- Coffee filters
- Plastic zip lock bags
- One pair of pliers
- One pair of side cutters
- Two canisters of Morton Salt – one empty and one partially full
- One opened instant ice compress
- Empty PSE blister packs
- One empty 32 ounce bottle of camp fuel.

Appellant's App. p. 120.

5

Jerry A. Hetrick, a forensic scientist for the Indiana State Police Laboratory, conducted testing on the various items taken from Walker's home. The result of Hetrick's testing indicated that the plastic bottle with the clear liquid contained methamphetamine and either ephedrine or pseudoephedrine.

On November 14, 2011, the State charged Walker with class A felony manufacturing methamphetamine. Walker's trial was scheduled to begin on March 15, 2012, and on that day, Walker filed various motions, including two motions to suppress evidence – one pursuant to the search warrant and the other pursuant to Jennifer's and Mary's consent.

Walker challenged the validity of the search on numerous grounds, including that the search warrant violated the Fourth Amendment to the United States Constitution because it was "overly broad." Appellant's App. p. 74. Additionally, Walker claimed that the search warrant affidavit failed to establish probable cause because although it alleged that Jennifer had given statements "against her penal interests," there was no indication that she was involved in any criminal activity. Id. Walker also alleged that the police failed to properly knock and announce their presence and that "[u]nder the totality of the circumstances, the search of [Walker's] home, pursuant to the search warrant was unreasonable, and thus violated Article I, Section 11 of the Indiana Constitution." Id. at 74-75.

In Walker's motion to suppress the evidence seized as the result of the search pursuant to Jennifer's consent, Walker claimed that the search violated the Fourth

Amendment because his "wife's consent to search was not validly given." Appellant's App. p. 79. In the alternative, Walker alleged that the "police exceeded the scope of [his] wife's consent, thereby violating the Fourth Amendment." Id. Finally, Walker argued that "[c]onsidering the totality of the circumstances, the police officer's search of [his] home was unreasonable and, thus, violated Article I, Section 11 of the Indiana Constitution." Id. at 80.

Walker's jury trial commenced on March 15, 2012. After the jury had been sworn but before the presentation of evidence, the trial court heard evidence regarding Walker's various motions, including his motion to suppress the evidence "that was obtained during the first warrant less [sic] entry into the premises." Tr. p. 99. Walker claimed that the police officers had failed to obtain valid consent. Id.

The State offered State's Exhibit 24, which was the consent form to search that Mary and Baumgartner had signed. Id. at 100; State's Ex. 24. The defense stipulated that the consent form was signed in front of Detective Meeks, and State's Exhibit 24 was admitted. Tr. p. 100.

Walker was then permitted to testify that he believed that the signatures were invalid because his mother suffered from Alzheimer's disease and was incompetent to consent. Tr. p. 101. Further, Walker testified that Baumgartner was legally incompetent to consent because Walker was the primary power of attorney and that she did not have power of attorney unless Walker was unable to perform his functions. Id. at 102.

7

While Walker was under cross-examination and redirect examination, there was confusion regarding whether Walker had a power of attorney or a guardianship over Mary. Walker's counsel offered to check the court records, and the trial court granted a "quick continuance." Tr. p. 104.

The trial court then explained that "[p]ower of attorney means that you are authorized to make decisions for someone. It does not divest that someone of the authority to make decisions for themselves." Id. By contrast, a guardianship divests a person of their own decision-making authority and requires a determination, as a matter of law, that the person is incompetent. Id. at 105. After determining that Walker possessed a power of attorney and not a guardianship, his motions to suppress were denied.

The next day, the jury returned a guilty verdict to class A felony manufacturing methamphetamine. On April 9, 2012, the trial court held a sentencing hearing during which it sentenced Walker to thirty years of incarceration. Walker now appeals.

DISCUSSION AND DECISION

Walker argues that the trial court erred by failing to grant his motion to suppress the evidence. Walker contends that "the finding by the trial court that the search was valid should be reversed and all evidence obtained pursuant to the illegal search suppressed. This case should be reversed and remanded with instructions that the State should be barred from further prosecution." Appellant's Br. p. 12.

8

## I. Procedural Posture and Standard of Review

At the outset, it is noteworthy that Walker frames the issue as whether the trial court erred by denying his motion to suppress. This Court has determined that unless a defendant seeks an interlocutory appeal, "the issue is more appropriately framed as whether the trial court abused its discretion by admitting evidence at trial." Washington v. State, 784 N.E.2d 584, 587 (Ind. Ct. App. 2003).

This is not merely a distinction without a difference insofar as the standard of review is concerned. Regarding a denial of a motion to suppress, this Court does not reweigh the evidence and considers conflicting evidence most favorable to the trial court's ruling. Kelley v. State, 825 N.E.2d 420, 424 (Ind. Ct. App. 2005). However, this Court also considers the uncontested evidence favorable to the defendant. Id.

By contrast, when reviewing the admissibility of evidence, because trial courts are given such broad discretion, we will reverse only when a trial court abused its discretion. Id. An abuse of discretion occurs when a decision is clearly against the logic and effect of the facts and circumstances before the court. Id. Accordingly, unless the defendant takes an interlocutory appeal, thereby permitting us to review a denial of a motion to suppress, we may not consider the uncontested evidence favorable to the defendant. Id.

Here, because Walker did not seek an interlocutory appeal of the trial court's denial of his motion to suppress, the issue is whether the trial court erred by admitting the evidence resulting from the search of his residence. Consequently, we will review the

admission of this evidence only for an abuse of discretion and will not consider the uncontested evidence favorable to Walker.

## II. Fourth Amendment – Search by Consent

Proceeding to the merits, Walker argues that Mary was incompetent to consent to the search of the residence and that Baumgartner was not authorized to consent because she was Mary's alternate power of attorney. The State counters that the police officers obtained valid consent from both Mary and Jennifer before entering the Walker residence.

Under the Fourth Amendment, the warrantless entry of a person's house is per se unreasonable. Georgia v. Randolph, 547 U.S. 103, 109 (2006). However, one "'jealously and carefully drawn'" exception is when voluntary consent is given by an individual possessing authority. Id. (quoting Jones v. United States, 357 U.S. 493, 499, 78 S. Ct. 1253, 1257 (1958)).

### A. Mary's Competency to Consent

As stated above, the Detective Meeks obtained Mary's written and verbal consent to search the residence which she owned and in which she resided. Tr. p. 100, 138; State's Ex. 24. However, Walker argues that Mary was incompetent because she had been diagnosed with Alzheimer's disease and placed on medication approximately two months before the search.

Initially, we observe that it is a general principle of law that everyone is presumed to be competent. See Bellmore v. State, 602 N.E.2d 111, 117 (Ind. Ct. App. 1992)

10

(stating that "[a] witness is presumed to be competent[;] . . . [i]f evidence places the competency of a witness in doubt, the trial court should order a psychiatric evaluation"); Hays v. Harmon, 809 N.E.2d 460, 464 (Ind. Ct. App. 2004) (stating that "[e]very person is presumed to be of sound mind to execute a will until the contrary is shown").

Here, at the time Mary consented to the search, there was no legal guardianship over her. Tr. p. 110. Thus, Mary was not divested of the ability to make decisions for herself. See Ind. Code § 29-3-1-6 (defining "Guardian" as "a fiduciary" appointed by "a court to be a guardian or conservator responsible . . . for . . . an incapacitated person"); Ind. Code § 29-3-1-7.5 (defining "Incapacitated person" as someone who "is unable" to manage the individual's property or provide self-care or both because of some incapacity).

Here, no doctor or any other expert specializing in neurological disorders testified regarding Mary's mental capacity. Indeed, it appears from the record that the only evidence regarding the extent of Mary's Alzheimer's disease is Walker's testimony that she had been diagnosed with the disease and placed on medication two months prior to giving consent. Tr. p. 103. Consequently, there is uncertainty regarding the extent to which Mary's condition had progressed. Under these facts and circumstances, we cannot conclude that Walker rebutted the presumption that Mary was competent to consent to the search of the residence that she owned and where she resided. Thus, this argument fails.

11

## B. Jennifer's Ability to Consent

The State argues that not only did Mary have authority to consent to the search, but that Jennifer also had authority to consent to the search. A third party who has common authority over the property may give consent. Hill v. State, 825 N.E.2d 432, 436 (Ind. Ct. App. 2005).

> Common authority rests on the mutual use of the property by persons generally having joint access or control for most purposes, so that it is reasonable to recognize that any of the cohabitants has the right to permit the inspection in his or her own right and that the others have assumed the risk that one of their number might permit the common area to be searched.

Id.

Here, at Walker's trial, Jennifer testified that Walker is her husband. Tr. p. 119. Jennifer further stated that on November 10, 2011, she was living with Walker and his mother, Mary. Id. at 119-120. Jennifer explained that on November 10th, she saw Walker "put something in, into a plastic bottle," and smelled a chemical odor. Id. at 120-21. Jennifer then packed up a few personal items and decided to leave the house with Mary. Based on these facts, it was reasonable for the police officers to conclude that Jennifer and Walker were husband and wife, living in the same house. Therefore, it was reasonable for Detective Meeks to believe that Jennifer had the authority to consent to the search.

Moreover, we find the instant case distinguishable from Georgia v. Randolph, 547 U.S. 103 (2006). In Randolph, after a domestic dispute, the police obtained the wife's consent to search over the husband's explicit objection. Id. at 107. The United States

12

Supreme Court determined that a co-tenant "has no recognized authority in law or social practice to prevail over a present and objecting co-tenant." Id. at 114. Indeed, the disputed consent, without more, "gives a police officer no better claim to reasonableness in entering than the officer would have in the absence of any consent at all." Id.

Unlike in Randolph, there is no indication that Walker explicitly refused consent. Thus, the trial court properly admitted the evidence discovered during the search, and we affirm the decision of the trial court.[5]

The judgment of the trial court is affirmed.

NAJAM, J., and RILEY, J., concur.

---

[5] Walker briefly cites to Article I, Section 11 of the Indiana Constitution to argue that the search of his premises was unreasonable. However, Walker fails to develop an independent argument and analysis regarding these facts; therefore, he has waived this claim. See Ackerman v. State, 774 N.E.2d 970, 978 n.10 (Ind. Ct. App. 2002) (stating that the failure to cite to any authority or to make a separate argument specific to the state constitutional provision waives the issue on review).